FILED

2022 Dec-30  PM 03:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT E

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| **BRIAN ROBERT BLAZER d/b/a CARPENTER BEE SOLUTIONS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BEST BEE BROTHERS LLC and RSP, INC.,**<br><br>**Defendants.** | **Civil Action No. 2:20-cv-480**<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Brian Robert Blazer d/b/a Carpenter Bee Solutions ("Blazer" or "Plaintiff") by and through its undersigned counsel, files this Original Complaint against Best Bee Brothers LLC and RSP, Inc. (collectively "Defendants"), as follows:

## PARTIES

1.      Plaintiff is a sole proprietorship owned and operated by Brian Robert Blazer with a principal place of business located in Cleburne County at 230 County Road 880, Heflin, Alabama 36264.

2.      Upon information and belief, Defendant RSP, Inc. (hereinafter "RSP") is a corporation organized and existing under the laws of the state of Wisconsin, with its principal place of business located at 12745 W Townsend St, Brookfield, WI 53005-3153. RSP's registered agent for service of process is Michael Ryan, 12745 W Townsend St, Brookfield, WI 53005-3153.

3.      Upon information and belief, Defendant Best Bee Brothers LLC is a domestic

limited liability company existing under the laws of the state of Wisconsin, with its principal place of business located at 12745 W Townsend St, Brookfield, WI 53005-3153. Best Bee Brothers LLC's registered agent for service of process is Michael Ryan, 12745 W Townsend St, Brookfield, WI 53005-3153.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. §§ 271, 281, 283, 284, and 285.

5.      The Court has personal jurisdiction over Defendants because: (i) Defendants are residents of and maintain regular and established places of business within the State of Wisconsin and within this judicial district and division; (ii) Defendants are registered and authorized to transact business in Wisconsin; (iii) Defendants maintain a registered agent for service of process in the State of Wisconsin; (iv) Defendants purposely, regularly, and continuously conduct business in the State of Wisconsin and within this judicial district and division; and (vi) the causes of action set forth herein arises out of or relate to Defendants' activities in the State of Wisconsin.

6.      Venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. §§ 1331, 1338(a), 1391 and 1400(b).

## RELEVANT FACTS

7.      On June 6, 2017, the USPTO issued United States Reissue Patent No. RE46,421 (the "'421 Patent"), which is a reissue of United States Patent No. 8,375,624 (the "'624 Patent"), which issued on February 19, 2013.  A true and correct copy of the '421 Patent is attached hereto

as Exhibit A and a true and correct copy of the '624 Patent is attached hereto as Exhibit B.

8.      Plaintiff is the owner, by assignment, of all right, title and interest in and to the '421 Patent and the '624 Patent. The '624 Patent was valid and enforceable up to June 6, 2017, at which time the '624 Patent was surrendered when the '421 Patent issued.  The '421 Patent is valid and enforceable.  Plaintiff has the right to bring suit for past, present and future patent infringement, and to collect past, present, and future damages.

9.      Plaintiff has been selling carpenter bee traps (hereinafter "carpenter bee trap(s)" or "bee trap(s)") covered by the '624 Patent and '421 Patent since at least 2009.  Most of the sales were through Plaintiff's website at the time (www.carpenterbeesolutions.com).  A true and correct screenshot from an archived version of Plaintiff's website as it appeared on March 24, 2011 is shown in Figure 1 below and attached as Exhibit C.[1]  The pictured bee trap was sold under the brand name "Best Bee Trap."  Plaintiff manufacturer each of his bee traps by hand.



Figure 1[2] – Plaintiff's Website on March 24, 2011.

10.      In or about the late summer of 2015 (August – September 2015), Plaintiff decided

---

[1] Source: Internet Archive Wayback Machine
(https://web.archive.org/web/20110324221645/http://www.carpenterbeesolutions.com/).
[2] Exhibit C.

to search for a manufacturer to build and possibly help distribute his bee traps because Plaintiff anticipated that the demand for his bee traps would outpace his ability to manufacture and ship them.

11.     Plaintiff conducted a search of the Internet and found Defendant RSP.  At that time, RSP's website stated that it specialized in manufacturing and protecting intellectual property rights.  A true and correct screenshot from an archived version of RSP's website as it appeared on August 9, 2015 is shown below in Figure 2 and attached as Exhibit D.[3] RSP's website stated at the time: "The customer's intellectual property is protected at RSP."



Figure 2[4] – RSP's Website on August 9, 2015.

12.     Plaintiff grew up on a dairy farm in Wisconsin 20 miles south of Green Bay. Plaintiff decided to contact RSP about manufacturing his patented carpenter bee traps based, in part, on the fact that they were a Wisconsin company owned by Wisconsin natives.  In the words of Plaintiff: "Wisconsin dairy farmers are extremely hard working and honesty is the code they

---

[3] Source: Internet Archive Wayback Machine
(https://web.archive.org/web/20150809060707/http://www.rspinc.com/contract.php).
[4] Exhibit D.

live by . . . our doors were never locked.  I was free to enter any of my neighbors' farms, barns, even houses . . . we trusted each other and we were trustworthy.  This quality is rare as I learned moving around the Country.  I thought these people [RSP] would have similar core values as I grew up with."

13.     Plaintiff communicated with RSP co-owners Mike Ryan and Paul Ryan, who expressed an interest in manufacturing and selling Plaintiff's patented bee traps.  Later, Plaintiff learned that Mike Ryan and Paul Ryan had never even heard of carpenter bees.  They had no knowledge or experience regarding bee traps.

14.     In or around October 2015, Paul Ryan visited Plaintiff's home to present a proposed license to Plaintiff that would give RSP the exclusive right to manufacture and sell Plaintiff's bee traps.

15.     Plaintiff and RSP were not able to agree on terms for a long-term exclusive license. However, in or around October 2015 Plaintiff and RSP did enter a temporary nonexclusive license agreement (the "Temporary License").

16.     On information and belief, the material terms of the Temporary License were as follows: (1) RSP was granted the right to manufacture and sell 20,000 bee traps; (2) RSP agreed to pay Plaintiff a 15% royalty based on sales revenues; (3) Plaintiff agreed to provide technical know-how and advertising assistance to RSP; (4) Plaintiff agreed to turn over control of Plaintiff's URL (www.carpenterbeesolutions.com); and (5) Plaintiff agreed to let RSP market the bee traps under Plaintiff's brand name "Best Bee Trap."

17.     RSP co-owners Mike Ryan and Paul Ryan established a separate company, Best Bee Brothers LLC, ("Best Bee Brothers") for marketing and selling Plaintiff's patented carpenter bee traps.

18.     As part of their obligation to help Best Bee Brothers with advertising, Plaintiff created marketing videos explaining how the patented carpenter bee trap works, as well as troubleshooting videos that Best Bee Brothers could make available to their carpenter bee trap customers.

19.     After entering into the Temporary License, RSP put together a marketing brochure for Best Bee Brothers ("Brochure") to present to Tractor Supply Company ("TSC"), in an attempt to enter into a distribution agreement with TSC.  A true and correct scanned copy of the Brochure is attached as Exhibit E.

20.     Notably, the Brochure indicates that the bee traps illustrated, described and offered for distribution are covered by the '624 Patent, and also includes some pages from the '624 Patent (*see* Figs. 3-5 below).



Figure 3[5] – Page 1 of the Brochure.



Figure 4[6] – Page 6 of the Brochure.

---

[5] Exhibit E.
[6] Exhibit E.



Figure 5[7] – Page 13 of the Brochure.

21.     A red flag was raised for Plaintiff when, in spite of RSP's representation that "customer's intellectual property is protected at RSP," RSP included in the Best Bee Brothers Brochure under a "The Future for Best Bee Brothers" heading, a description and illustration of a bee trap that they were developing and that was a blatant attempt to "design around" Plaintiff's patented bee trap that was the subject of the Temporary License.  *See* Figure 6 below.

---

[7] Exhibit E.



Figure 6[8] – Page 10 of the Brochure.

22.      RSP also sent Plaintiff prototypes of bee traps that were not covered by Plaintiff's patent for testing by Plaintiff.  Plaintiff informed RSP that it was not a good idea to try to develop and market a carpenter bee trap that was not covered by Plaintiff's patent and that this behavior was not consistent with RSP's representation that "customer's intellectual property is protected at RSP". Plaintiff tested these attempted "design around" bee traps and they did not work.

23.      During the term of the Temporary License, Plaintiff contracted with another company, Chrisman Mill Farms, for the manufacture of carpenter bee traps that would be made in the United States by military veterans.  RSP approached Plaintiff about taking over that

_____

[8] Exhibit E.

contract, and represented to Plaintiff that they would manufacture the carpenter bee traps in Milwaukee and employ disable veterans to make the carpenter bee traps.

24.     Plaintiff gave RSP an opportunity to demonstrate that they could manufacture such veteran and American made carpenter bee traps, but the carpenter bee traps that they delivered were, in fact, manufactured at their Chinese manufacturing facility and were of significantly lower quality than the carpenter bee traps that were being manufactured and sold by Chrisman Mill Farms.  Thus, Plaintiff did not allow RSP to take over that contract.

25.     With respect to the Temporary License, RSP (via Best Bee Brothers) sold the 20,000 bee traps that were authorized under the Temporary License and paid Plaintiff the agreed upon 15% royalty for those 20,000 bee traps.

26.     Even though the Temporary License did not authorize additional manufacturing and sales beyond 20,000 bee traps, RSP manufactured and sold an additional 60,000 traps and paid Plaintiff a 15% royalty on those sales.

27.     Plaintiff informed RSP that they would have to enter into another license agreement in order for RSP to continue to manufacture and sell Plaintiff's patented bee trap.

28.     Plaintiff and RSP were not able to agree on the terms of a new license agreement, and RSP informed Plaintiff that they would stop selling bee traps on October 1, 2017.

29.     However, RSP continued to sell Plaintiff's patented bee traps without authorization after October 1, 2017.  In addition, they continued to market their infringing bee traps using Plaintiff's original brand name "Best Bee Trap."

30.     In December 2015, Plaintiff entered into a Settlement Agreement with Amazon.com ("Amazon"), which provided Plaintiff a mechanism for removing current and future infringing bee trap listings from Amazon.

31.     Because Plaintiff and RSP/Best Bee Brothers were not able to agree on terms of a new license agreement, Plaintiff had RSP/Best Bee Brother's infringing bee trap listings removed from Amazon.  However, RSP/Best Bee Brothers continued to sell infringing bee traps through their own website and through third party retail stores.

32.     RSP/Best Bee Brothers were desperate to get their infringing bee traps back on Amazon (via Best Bee Brothers) during the 2018 carpenter bee season, which typically starts in or around April.  Thus, in or around April/May 2019, RSP/Best Bee Brothers reached out to Plaintiff again regarding a possible license agreement to manufacture and sell Plaintiff's patented bee trap.

33.     RSP/Best Bee Brothers reached out to Plaintiff on April 28, 2018 via a text exchange between Mike Ryan (RSP/Best Bee Brothers) and Plaintiff, Brian Blazer.  Screenshots of the text exchange that took place between April 28, 2018 and May 1, 2018 are attached hereto as **Exhibit F** (hereinafter "2018 Text Exchange" or Exhibit F).

34.     In the 2018 Text Exchange, Plaintiff reminded Mike Ryan that they have not compensated Plaintiff for their infringing sales and indicated to Mike Ryan that he would consider granting them a license if RSP/Best Bee Brothers compensated him for past infringing sales.

35.     Mike Ryan responded by apologizing and stating that they would compensate Plaintiff for past sales but only if Plaintiff agreed to grant a license for future sales to RSP/Best Bee Brothers.  Specifically, Mike Ryan states "I will compensate you for all past sales . . . I can send a check based on having a signed contract . . . [w]e will make up every penny for every trap but we need to get back on amazon."  Thus, Mike Ryan admitted that RSP/Best Bee Brothers is liable for royalties on past sales of their carpenter bee traps.

36.     Prior to this communication from Mike Ryan (on behalf of Defendants), and because Defendants did not agree to Plaintiff's terms for a license, Plaintiff entered into a license with another licensee ("New Licensee") to manufacture and sell his carpenter bee traps.  The New Licensee invested over $100,000 in carpenter bee trap inventory for sale during the 2018 carpenter bee season.

37.     Thus, Plaintiff was hesitant to offer Defendants a license at this time for two reasons: (1) Defendants conditioned compensating Plaintiff for past infringing sales on Plaintiff granting Defendants a license (essentially, Defendants were refusing to pay amounts they owed Plaintiff for past infringing sales as leverage to negotiate a license with terms favorable to them); and (2) Plaintiff did not want to impede the ability of the New Licensee to sell the bee trap inventory they had invested in for the 2018 carpenter bee season by licensing Defendants right at the beginning of the 2018 carpenter bee season.

38.     After the New Licensee sold their bee trap inventory, Plaintiff again approached Defendants with a license offer.  However, Defendants again declined to enter into a license agreement with Plaintiff.

## DEFENDANTS' PRODUCTS

39.     Upon information and belief, Defendants sell, advertise, offer for sale, use, or otherwise provide bee traps including, but not limited to the "Pine Wood Carpenter Bee Box Trap," the "Best Carpenter Bee Trap," the "Best Bee Trap and Pinewood Box Trap Combo Pack" and the "Best Carpenter Bee Control Kit" (collectively the "Accused Instrumentalities").

## COUNT 1 – INFRINGEMENT OF US PATENT NO. 8,375,624

40.     Plaintiff incorporates the above paragraphs by reference.

41.     Defendants have been on notice of the '624 Patent as early as summer of 2015

(August – September 2015), when Plaintiff approached RSP for a possible manufacturing contract.

42.     Upon information and belief, Defendants have directly infringed at least claims 1, 2, 6-8 and 10 of the '624 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

43.     Upon information and belief, Defendant has willfully infringed, has willfully and actively induce the direct infringement by others, and has willfully and actively contributed to the infringement of others, at least 1, 2, 6-8 and 10 of the '624 Patent.  Defendants' infringement of the '624 Patent has been objectively reckless, willful and deliberate, entitling Plaintiff to enhanced damages pursuant to 35 U.S.C. § 284 and to attorneys' fees pursuant to 35 U.S.C. § 285.

44.     By way of example, Defendants' "Best Carpenter Bee Trap" is a representative example of the Accused Instrumentalities and is a carpenter bee trap. See Figure 1 below, which is screenshot from Best Bee Brother's website, showing a picture of the Best Carpenter Bee Trap.



Figure 1[9] – Best Carpenter Bee Trap.

---

[9] https://bestbeebrothers.com/products/best-carpenter-bee-trap - 3/24/20

45.     As shown in Figure 2 below, the Carpenter Bee Trap includes a trap entrance unit (Arrow A) that forms a plenum composed of wood.



Figure 2[10] – Best Carpenter Bee Trap.

46.     As shown above in Figure 2, the Best Carpenter Bee Trap has a trap entrance unit having at least one hole drilled there through and sized to mimic a natural carpenter bee nest tunnel so as to provide a primary attractant (Arrow B).

47.     As shown above in Figure 2, the entrance hole of the Best Carpenter Bee Trap extends at an upward angle (Arrow B).  The hole is sized and shaped to provide a primary attractant for carpenter bees. The Best Carpenter Bee Trap also includes a means to shelter an entrance to the hole in the form of a top panel (Arrow C) that overhangs a side wall (Arrow D) of the trap entrance unit (Arrow A).

48.     As shown below in Figure 3 below, the Best Carpenter Bee Trap contains a

---

[10] https://bestbeebrothers.com/products/best-carpenter-bee-trap - 3/24/20

receptacle adapter (Arrow E) located at the bottom of the trap entrance unit (Arrow A).  The receptacle adapter (Arrow E) is configured to receive a clear or translucent receptacle (Arrow F).



Figure 3[11] – Best Carpenter Bee Trap.

49.     As shown above in Figures 2 and 3, the receptacle (Arrow F) is received by the receptacle adapter (Arrow E).  The clear or translucent receptacle (Arrow F) is situated at the bottom of the trap entrance unit (Arrow A).  Ambient light passes through the clear or translucent receptacle (Arrow F) into the interior of the plenum (Arrow A) through a hole, located at the bottom of the plenum (Arrow A).  The ambient light entering the bottom of the plenum (Arrow A) serves as a secondary attractant.  The clear or translucent receptacle (Arrow F) receives trapped carpenter bees.

50.     Further, Defendants have explicitly acknowledged that the Best Carpenter Bee

---

[11] https://bestbeebrothers.com/products/best-carpenter-bee-trap, as visited on March 24, 2020.

Trap is covered by the claims of the '624 Patent.

51.    Specifically, the Brochure that RSP/Best Bee Brothers created to present to TSC explicitly states that the "Best Bee Trap ," which is the same design as the "Best Carpenter Bee Trap" currently offered on Best Bee Brother's website, is a **"Patented Design (Patent # 837624)**." *See* Figures 3 and 4, reproduced below.



Figure 3[12] – Page 1 of the Brochure.

---

[12] Exhibit E.



Figure 4[13] – Page 6 of the Brochure.

52.      Indeed, the Best Carpenter Bee Trap sold by Best Bee Brothers utilizes a design that was literally copied from the '624 Patent and the '421 Patent.  *See* Figures 7A and 7B below, which shows a picture of the Best Carpenter Bee Trap next to one of the figures in the '624 Patent (this figure is also include in the '421 Patent).

---

[13] Exhibit E.

 

Figure 7A[14] – Best Carpenter Bee Trap.   Figure 7B[15] – Fig. 2C from '624 Patent.

53.    In addition, Defendant also admitted to Plaintiff that they were liable for past infringing sales during the 2018 Text Exchange between Plaintiff and Mike Ryan (RSP/Best Bee Brothers).  During the 2018 Text Exchange, when Plaintiff reminded Mike Ryan that they have not compensated Plaintiff for their past infringing sales, Mike Ryan responded by apologizing and stating "I will compensate you for all past sales . . . I can send a check based on having a signed contract . . . [w]e will make up every penny for every trap but we need to get back on amazon."  *See* Figure 8 below, which is an excerpt from the 2018 Text Exchange.

---

[14] https://bestbeebrothers.com/products/best-carpenter-bee-trap, as visited On March 24, 2020.
[15] Exhibit A.



(From Brian Blazer)     (From Mike Ryan)     (From Mike Ryan)

Figure 8[16] – Excerpts from 2018 Text Exchange.

54.     Plaintiff has been and continues to be actively engaged in the business of selling its patented carpenter bee traps both directly and through licensees of the '624 and '421 Patents, a business, which has been severely damaged by Defendants' infringement of the '624 and '421 Patents.   Plaintiff has suffered and continues to suffer damages as a direct, proximate, and foreseeable result of Defendants' infringement of the '624 and '421 Patents and will suffer additional and irreparable damages unless Defendant is permanently enjoined by this Court from continuing its infringement. Plaintiff has no adequate remedy at law.

## COUNT 2 – INFRINGEMENT OF US PATENT NO. RE46,421

55.     Plaintiff incorporates the above paragraphs by reference.

56.     Defendants have been on notice of the '624 Patent, which reissued as the '421 Patent, at least as early as summer of 2015 (August – September 2015), when Plaintiff approached RSP for a possible manufacturing contract.

---

[16] Exhibit F.

57.     Upon information and belief, Defendants have directly infringed and continue to directly infringe at least claims 1, 2, 6-8, 10, 13-17 and 19 of the '421 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

58.     Upon information and belief, Defendant has and continues to willfully infringe, willfully and actively induce the direct infringement by others, and willfully and actively contribute to the infringement of others, of at least claims 1, 2, 6-8, 10, 13-17 and 19 of the '421 Patent.  Defendants' infringement of the '421 Patent has been, and continues to be, objectively reckless, willful and deliberate, entitling Plaintiff to enhanced damages pursuant to 35 U.S.C. § 284 and to attorneys' fees pursuant to 35 U.S.C. § 285.

59.     By way of example, Defendants' "Best Carpenter Bee Trap" is a representative example of the Accused Instrumentalities and is a carpenter bee trap.  *See* Figure 1, reproduced below, which is screenshot from Best Bee Brother's website, showing a picture of the Best Carpenter Bee Trap.



Figure 1[17] – Best Carpenter Bee Trap.

60.     As shown in Figure 2, reproduced below, the Carpenter Bee Trap includes a trap

---

[17] https://bestbeebrothers.com/products/best-carpenter-bee-trap - 3/24/20

entrance unit (Arrow A) that forms a plenum composed of wood.



Figure 2[18] – Best Carpenter Bee Trap.

61.     As shown above in Figure 2, the Best Carpenter Bee Trap has a trap entrance unit having at least one hole drilled there through and sized to mimic a natural carpenter bee nest tunnel so as to provide a primary attractant (Arrow B).

62.     As shown above in Figure 2, the entrance hole (Arrow B) of the Best Carpenter Bee Trap extends at an upward angle.   The hole is sized and shaped to provide a primary attractant for carpenter bees.   The Best Carpenter Bee Trap also includes a means to shelter an entrance to the hole in the form of a top panel (Arrow C) that overhangs a side wall (Arrow D) of the trap entrance unit (Arrow A).

63.     As shown in Figure 3, reproduced below, the Best Carpenter Bee Trap contains a receptacle adapter (Arrow E) located at the bottom of the trap entrance unit (Arrow A). The

---

[18] https://bestbeebrothers.com/products/best-carpenter-bee-trap - 3/24/20

receptacle adapter (Arrow E) is configured to receive a clear or translucent receptacle (Arrow F).



Figure 3[19] – Best Carpenter Bee Trap

64.    As shown above in Figures 2 and 3, the receptacle (Arrow F) is received by the receptacle adapter (Arrow E).  The clear or translucent receptacle (Arrow F) is situated at the bottom of the trap entrance unit (Arrow A).  Ambient light passes through the clear or translucent receptacle (Arrow F) into the interior of the plenum through a hole, located at the bottom of the plenum (Arrow A).  The ambient light entering the bottom of the plenum (Arrow A) serves as a secondary attractant.  The clear or translucent receptacle (Arrow F) receives trapped carpenter bees.

65.    Further, Defendants have explicitly acknowledged that the Best Carpenter Bee Trap is covered by the claims of the '624 Patent (that was reissued as the '421 Patent).

---

[19] https://bestbeebrothers.com/products/best-carpenter-bee-trap, as visited on March 24, 2020.

66.     Specifically, the Brochure that RSP/Best Bee Brothers created to present to TSC explicitly states that the "Best Bee Trap," which is the same design as the "Best Carpenter Bee Trap" currently offered on Best Bee Brother's website, is a **"Patented Design (Patent # 837624)**." *See* Figures 3 and 4, reproduced below.



Figure 3[20] – Page 1 of the Brochure.

---

[20] Exhibit E.



Figure 4[21] – Page 6 of the Brochure.

67.    Indeed, the Best Carpenter Bee Trap sold by Best Bee Brothers utilizes a design that was literally copied from the '624 Patent and '421 Patent.  *See* Figures 7A and 7B below, which shows a picture of the Best Carpenter Bee Trap next to one of the figures in the '421 Patent (the same figure is included in the '624 Patent).

---

[21] Exhibit E.




Figure 7A[22] – Best Carpenter Bee Trap   .      Figure 7B[23] – Fig. 2C from '421 Patent.

68.     In addition, Defendant also admitted to Plaintiff that they were liable for past infringing sales during the 2018 Text Exchange between Plaintiff and Mike Ryan (RSP/Best Bee Brothers).  During the 2018 Text Exchange, when Plaintiff reminded Mike Ryan that they have not compensated Plaintiff for their past infringing sales, Mike Ryan responded by apologizing and stating "I will compensate you for all past sales . . . I can send a check based on having a signed contract . . . [w]e will make up every penny for every trap but we need to get back on amazon."  *See* Figure 8 below, which is an excerpt from the 2018 Text Exchange.

---

[22] https://bestbeebrothers.com/products/best-carpenter-bee-trap, as visited on March 24, 2020.
[23] Exhibit A.



(From Brian Blazer)      (From Mike Ryan)      (From Mike Ryan)

Figure 8[24] – Excerpts from 2018 Text Exchange.

69.      Plaintiff has sold and continues to sell its patented carpenter bee traps and continues to be actively engaged in the business of selling its patented carpenter bee traps both directly and through licensees of the '624 and '421 Patents.  Defendants' infringement of the '624 and '421 Patents have reduced Plaintiff's and its licensees' sales.  Plaintiff has suffered and continues to suffer damages as a direct, proximate, and foreseeable result of Defendants' infringement of the '624 and '421 Patents and will suffer additional and irreparable damages unless Defendant is permanently enjoined by this Court from continuing its infringement. Plaintiff has no adequate remedy at law.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests that the Court find in its favor and against Defendants, and that the Court grant Plaintiff the following relief:

---

[24] Exhibit F.

A.     An adjudication that one or more claims of the '421 Patent have been infringed, either literally and/or under the doctrine of equivalents, by Defendants and/or by others to whose infringement Defendants have contributed and/or by others whose infringement has been induced by Defendants;

B.     An adjudication that Defendants and/or others to whose infringement Defendants have contributed and/or by others whose infringement has been induced by Defendants infringe, either literally and/or under the doctrine of equivalents, of one or more claims of the '624;

C.     An award to Plaintiff of damages adequate to compensate Plaintiff for Defendants' acts of infringement together with pre-judgment and post-judgment interest;

D.     An adjudication that one or more of Defendants' acts of infringement be found to be willful from in or about summer of 2015 (August – September 2015), which is the time that Defendants became aware of the infringing nature of their actions, and that the Court award treble damages for the period of such willful infringement, pursuant to 35 U.S.C. § 284;

E.     A grant of permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendants from further acts of (1) infringement, (2) contributory infringement, and (3) actively inducing infringement with respect to the '421 Patent;

F.     That this Court declare this to be an exceptional case and award Plaintiff reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

G.     Any further relief that this Court deems just and proper.

Respectfully submitted this 25th day of March 2020.

/s/ *Christopher A. Honea*
Christopher A. Honea, Bar No. 232473
René A. Vazquez *(admission anticipated)*
Thomas G. Fasone III *(admission anticipated)*
Randall Garteiser (*admission anticipated*)

Christopher A. Honea (chonea@ghiplaw.com)
René A. Vazquez (rvazquez@ghiplaw.com)
Thomas G. Fasone III (tfasone@ghiplaw.com)
Randall Garteiser (rgarteiser@ghiplaw.com)
**GARTEISER HONEA, PLLC**
119 W Ferguson
Tyler, TX 75702
Telephone: (903) 705-7420
Facsimile: (888) 908-4400

**COUNSEL FOR BRIAN BLAZER**
**D/B/A CARPENTER BEE SOLUTIONS**