# EXHIBIT G

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BRIAN ROBERT BLAZER, DBA CARPENTER BEE SOLUTIONS,**
*Plaintiff-Appellant*

v.

**BEST BEE BROTHERS LLC, RSP INC.,**
*Defendants-Appellees*

---

2022-1033

---

Appeal from the United States District Court for the Eastern District of Wisconsin in No. 2:20-cv-00480-BHL, Judge Brett H. Ludwig.

---

Decided: November 16, 2022

---

JOSEPH J. JACOBI, Hansen Reynolds LLC, Chicago, IL, argued for plaintiff-appellant. Also represented by JEREMY ADELSON, Milwaukee, WI.

JAMES F. BOYLE, Boyle Fredrickson, S.C., Milwaukee, WI, argued for defendants-appellees.

---

Before DYK, TARANTO, and HUGHES, *Circuit Judges.*

TARANTO, *Circuit Judge*.

Brian Robert Blazer owns U.S. Patent No. RE46,421 and runs a business called Carpenter Bee Solutions. In 2020, he sued Best Bee Brothers LLC and RSP, Inc., in the Eastern District of Wisconsin, alleging willful infringement of the '421 patent. In October 2021, the district court issued an order construing the claim phrase "receptacle adapter," which appears in the patent's two independent claims, and granting the defendants' motion for summary judgment of noninfringement based on the "receptacle adapter" construction. *Blazer v. Best Bee Brothers LLC*, No. 20-cv-00480, 2021 WL 4552784 (E.D. Wis. Oct. 5, 2021). Mr. Blazer appeals. We reject the district court's construction of "receptacle adapter" as unduly narrow and instead construe the phrase to mean "a structure configured to receive and help retain a receptacle." That holding requires vacatur of the district court's judgment of noninfringement and remand of the case for application of the correct construction.

I

A

Mr. Blazer, together with his brother, sought patent protection for purportedly improved traps for carpenter bees. On February 19, 2013, the U.S. Patent and Trademark Office issued them U.S. Patent No. 8,375,624 for such traps. On June, 6, 2017, the patent was reissued pursuant to 35 U.S.C. § 251 as the '421 patent.

The '421 patent describes traps designed to better capture carpenter bees and thus protect wooden structures from infestation. *See* '421 patent, abstract; *id.*, col. 2, lines 34–37; *id.*, col. 7, line 40, through col. 9, line 2. It explains that carpenter bees bore into wood to create tunnels in which they store their eggs and pollen, *id.*, col. 1, lines 18–39, and the holes and stains resulting from this tunneling are unsightly and can cause structural damage, which can

be exacerbated by the woodpeckers that often feed on carpenter bee larvae, *id.*, col. 1, lines 40–62. According to the patent, although many insect traps exist, few specifically target carpenter bees, and those that do often are expensive and inconvenient to use or fail to take full advantage of the use of ambient light to lure and disorient the bees. *Id.*, col. 1, line 66, through col. 2, line 30.

The claimed bee traps include at least one attachable and disposable receptacle, a trap entrance unit, and a "receptacle adapter" for attaching the receptacle to the trap entrance unit. *Id.*, abstract; *id.*, col. 2, lines 42–45. The trap entrance unit features at least one upward-sloping bee entrance hole—designed to mimic the entrances typically found in natural bee nests and to reduce the amount of ambient light entering the hole—and an overhanging roof that helps further shelter the hole from light. *Id.*, col. 2, lines 45–51. The interior of the trap entrance unit is designed to form a plenum that encourages the bees to continue traveling deeper into the trap, ultimately passing through a receptacle adapter and ending up in a removable receptacle. *Id.*, col. 2, lines 51–54; *id.*, col. 6, lines 4–16. The area around the receptacle adapter is sloped to enable gravity to aid in the movement of the bees into the receptacle. *Id.*, col. 2, lines 56–58.

The patent, broadly speaking, discloses three different types of receptacle adapters that can connect the trap entrance unit to the receptacle: (1) a separate coupling device distinct from, but connecting, the trap and receptacle, (2) a hole into which the receptacle is inserted and then retained by friction ("a friction fit"), and (3) a hole with threads into which the receptacle is screwed. *See id.*, Figs. 2A–C, col. 5, lines 62–65 (discussing and showing "adapter coupling 24"); *id.*, col. 8, lines 52–55 ("The carpenter bee trap of claim 13, wherein the receptacle adapter comprises: a reducer section; and an adapter coupling attached to the reducer section . . . ."); *id.*, col. 6, lines 42–45 ("A receptacle adapter 44 at the bottom of vertical bore 43 is a friction fit

similar to bore 34 in trap entrance unit 3 and allows convenient insertion and removal of clear receptacle 48."); *id.*, col. 8, lines 1–3 ("wherein the receptacle is configured to provide a friction fit with said bottom of said plenum"); *id.*, col. 5, lines 8–12 ("Receptacle adapter coupling 5 is a screw type bottle cap with a hole bored through it [that] . . . is connected to reducer section 4 with a heat shrink tube to form a permanently attached female threaded coupling for the receptacle."); *id.*, col. 8, lines 64–67 ("wherein the receptacle adapter comprises a female threaded coupling that is configured to receive a receptacle with a corresponding male threaded coupling").

The receptacle and (optionally) the area surrounding the receptacle adapter are partially transparent, so that more light is admitted there than within the plenum, tricking the bees into identifying the brightly lit adapter and receptacle as an exit route. *Id.*, col. 2, line 58, through col. 3, line 6. As a result, the bees move through the adapter into the receptacle and attempt to escape through the receptacle's transparent walls, rather than turn back and try to exit through the dimly lit plenum. *Id.* The trapped bees, the patent states, make noises that lure additional bees, causing a cascading effect as more and more enter and become stuck; once the trap is full of dead bees, the receptacle can be removed, sealed, and discarded. *Id.*, col. 3, lines 5–9. The receptacle can even be a repurposed standard beverage bottle, the transparent walls of which facilitate using ambient light to lure the bees away from the dimly lit plenum and to trap them within the bottle, as well as enabling a user to monitor how full the bottle is and how effectively the trap is working. *Id.*, col. 3, lines 9–14; *id.*, col. 5, lines 15–47.

The '421 patent features two independent claims, which are:

1. A carpenter bee trap comprising:

>> a trap entrance unit forming a plenum being made of wood or a wood substitute;
>
> said trap entrance unit having at least one hole drilled there-through and sized to mimic a natural carpenter bee nest tunnel so as to provide a primary attractant;
>
> said hole extending from the outside of the trap unit to a plenum interior; said hole being configured to extend substantially horizontally or at an upward angle; a means to shelter an entrance to said hole is provided to reduce the admittance of ambient light;
>
> said trap unit further comprising *a receptacle adapter being substantially located at the bottom of said trap unit and being configured to receive a clear or translucent receptacle*;
>
> *a receptacle received by said adapter* situated to allow ambient light to enter through said bottom into said plenum interior, thereby providing a secondary attractant; said receptacle further being provided to receive trapped bees.
>
> 13. A carpenter bee trap, comprising:
>
>> a trap entrance unit formed of wood or a wood substitute, wherein at least one side of the trap entrance unit has at least one entrance hole that extends from outside the trap entrance unit to an interior of the trap entrance unit, wherein the at least one entrance hole extends substantially horizontally or at an upward angle with a size and shape configured to provide a primary attractant for carpenter bees, and wherein the trap entrance unit further comprises an exit opening for providing an exit path from the interior of the trap entrance unit; and
>>
>> *a receptacle adapter located at the exit opening of the trap entrance unit, wherein the receptacle adapter is*

> *adapted to receive at least one receptacle and is adapted so as to allow at least some ambient light to enter the interior of the trap entrance unit via the exit opening, thereby providing a secondary attractant for carpenter bees.*

*Id.*, col. 7, lines 41–60 (emphases added); *id.*, col. 8, lines 24–41 (emphasis added).

### B

RSP is owned by two brothers, and Best Bee Brothers LLC, created by the RSP brothers, sells carpenter bee traps. We hereafter refer to RSP and Best Bee Brothers as "BBB." For two years, Mr. Blazer worked with BBB to put the patented invention into practice, but they were unable to negotiate an extended licensing agreement. *Blazer*, 2021 WL 4552784, at *1; J.A. 53–60; J.A. 565–66. In 2020, Mr. Blazer sued BBB, alleging that BBB, by its marketing of carpenter bee traps, was willfully infringing the '421 patent. J.A. 49–76.

After discovery, BBB moved for summary judgment of noninfringement of the two independent claims (1 and 13) and hence of all asserted claims. J.A. 46. In October 2021, the district court issued an order construing "receptacle adapter," which appears in both independent claims, and granting BBB summary judgment. The court concluded that, under its construction, a reasonable finder of fact could not find that the accused traps contain such an adapter or (under the legal standards governing the doctrine of equivalents) its equivalent. *Blazer*, 2021 WL 4552784, at *1–6.

The district court started by construing "receptacle adapter." *Id.* at *3–5. The court concluded that Mr. Blazer's proposed construction—"the term 'receptacle adapter,' when properly construed in view of the explicit teachings of the specification, includes an opening in the trap entrance unit that receives the receptacle"—was too

broad. *Id.* at *3–4 (citation omitted). The court also concluded that BBB's construction—"a separate device for connecting a receptacle or container to the bottom of the wood plenum"—was too narrow, explaining that it would improperly exclude the specification's embodiments lacking "a separate device" for attaching the receptacle to the wooden plenum, *e.g.*, "the 'friction fit' version of 'receptacle adapter.'" *Id.* (citation omitted).

Instead, the court determined that a "receptacle adapter" must be (1) "substantially located at the bottom of the carpenter bee trap, at the exit opening of the trap entrance unit"; (2) "configured to receive a clear or translucent receptacle"; (3) "adapted so as to allow at least some ambient light to enter the interior of the trap entrance unit via the exit opening, thereby providing a secondary attractant for carpenter bees"; and (4) either (a) "a coupling," (b) "a vertical bore sized to allow the insertion of a receptacle which is retained by friction," or (c) "a vertical bore threaded or fitted with a threaded insert to positively retain the receptacle." *Id.* at *5. Based on that construction, the court found that the accused traps do not infringe literally or under the doctrine of equivalents, and it granted BBB's motion for summary judgment. *Id.*

The court entered final judgment of noninfringement on October 5, 2021. J.A. 10. Mr. Blazer filed a notice of appeal on October 7, 2021, J.A. 47, within the thirty days permitted by 28 U.S.C. § 2107(a). We have jurisdiction under 28 U.S.C. § 1295(a)(1).

II

The district court here construed a single phrase, "receptacle adapter," and granted summary judgment of noninfringement based on that construction. *Blazer*, 2021 WL 4552784, at *3–5. Although we agree with the district court that both parties' claim constructions were legally incorrect, we conclude that the district court's own construction is also legally incorrect. We reject that construction

and adopt our own: "a structure configured to receive and help retain a receptacle." We vacate the judgment of non-infringement and remand.

A

Claim construction is ultimately a legal issue, which we decide de novo, and we also assess the intrinsic-evidence aspects of a claim-construction analysis de novo. *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331–32 (2015); *see Data Engine Technologies LLC v. Google LLC*, 10 F.4th 1375, 1380 (Fed. Cir. 2021). We review for clear error any district court factual determinations that underly a claim construction. *Teva*, 574 U.S. at 322, 332; *SpeedTrack, Inc. v. Amazon.com, Inc.*, 998 F.3d 1373, 1377–78 (Fed. Cir. 2021).

Although "the words of a claim 'are generally given their ordinary and customary meaning,'" as understood by a relevant artisan at the time of the invention, such an artisan "is deemed to read the claim term . . . in the context of the particular claim in which the disputed term appears" and "in the context of the entire patent, including the specification." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc) (citations omitted). Thus, how a potential claim construction fits the claims themselves and the specification is commonly key to its soundness. The specification is especially significant when a claim term possesses "a range of possible ordinary meanings in context" or otherwise features "genuine uncertainties." *Straight Path IP Group, Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1361 (Fed. Cir. 2015). Those principles resolve this case, which involves a phrase, "receptacle adapter," that leaves uncertainty on its face (adapted in what respect?). *See World Class Technology Corp. v. Ormco Corp.*, 769 F.3d 1120, 1124 (Fed. Cir. 2014) ("Rather than providing an unambiguous, clear meaning, therefore, the claim language leaves uncertainty . . . . In such circumstances, we turn to the specification to resolve the uncertainty." (citing

*Phillips*, 415 F.3d at 1315–16 (quoting *Bates v. Coe,* 98 U.S. 31, 38 (1878) ("in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims"))) (other citations omitted)).

1

The district court's construction of "receptacle adapter" is incorrect. That construction erroneously imports limitations into "receptacle adapter" based on particular embodiments described in the specification. The construction "require[s] four elements," including that the adapter "*must be*" one of the three embodiments. *Blazer*, 2021 WL 4552784, at *5 (emphasis added). Although courts must read a patent's claims in light of the specification, *see, e.g.*, *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998), that obligation does not authorize "reading a limitation from the written description into the claims," which we have described as "one of the cardinal sins of patent law," *SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001). The district court, in confining the scope of "receptacle adapter" to three particular embodiments, crossed that important line. *See, e.g.*, *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1432–34 (Fed. Cir. 1988).

The district court's error is confirmed by the patent's dependent claims. Certain dependent claims recite specific "receptacle adapter" embodiments, *see* '421 patent, col. 8, lines 1–3 ("friction fit"); *id.*, col. 8, lines 52–60 ("adapter coupling"); *id.*, col. 8, lines 64–67 ("female threaded coupling"), and claim 19 broadly recites: "The carpenter bee trap of claim 13, wherein the *exit opening is shaped so as to function as the receptacle adapter*," *id.*, col. 8, lines 61–63 (emphasis added). The phrase "receptacle adapter," then, must encompass not only the three specific types of

adapters identified by the district court but also holes and other structures with the property common to the full range of specification embodiments. We therefore reject the district court's construction.[1]

2

We also reject BBB's proposed construction, as the district court did. BBB urges that "'receptacle adapter' means a separate device for connecting a receptacle or container to the bottom of the wood plenum." BBB's Response Br. 4. That construction is contrary to the specification, which clearly indicates that the phrase covers not only the separate-device "coupling" embodiment but also non-separate-device embodiments such as friction-fit and screw-fit holes.

The best construction is one that accommodates the range of plainly stated embodiments and identifies a common property that gives a fair answer to the question: adapted in what respect? The claims and written description clearly establish that a "receptacle adapter" may be a hole, *see* '421 patent, col. 8, lines 61–63 ("wherein the exit opening is shaped so as to function as the receptacle adapter"); *id.*, col. 5, lines 8–12; *id.*, col. 8, lines 64–67; *id.*, col. 6, lines 42–45; *id.*, col. 8, lines 1–3, and that it functions to receive a receptacle, *see id.*, col. 5, lines 2–5 ("At the bottom of trap entrance unit 1 is reducer section [4] *15* made of clear plastic with adapter coupling [5] *14* at the bottom

---

[1] Mr. Blazer objects to other components of the district court's claim construction as disregarding distinctions between claim 1 and claim 13. *See* Mr. Blazer's Opening Br. 19–24. Because those elements of the district court's claim construction did not affect its infringement analysis, we do not address them. The district court should revisit those challenged elements of its claim construction if they become material on remand.

Case: 22-1033    Document: 42    Page: 11    Filed: 12/30/2022
Case 2:21-cv-00633-CLM   Document 41-1   Filed 11/16/2022   Page 12 of 13

BLAZER v. BEST BEE BROTHERS LLC    11

which accepts a clear plastic removable receptacle [6] *18*." (alterations in original)); *id.*, col. 7, lines 52–55 ("a receptacle adapter . . . being configured to receive a clear or translucent receptacle"); *id.*, col. 7, line 56 ("a receptacle received by said adapter"); *id.*, col. 8, lines 36–37 ("the receptacle adapter is adapted to receive at least one receptacle"); *id.*, col. 8, lines 64–67 ("the receptacle adapter comprises a female threaded coupling that is configured to receive a receptacle with a corresponding male threaded coupling"). All the embodiments perform some retention function. *See id.*, abstract ("[at] least one removable receptacle attached to at least one receptacle adapter coupling"); *id.*, col. 2, lines 54–56 ("The at least one receptacle adapter allows convenient attachment, removal, and replacement of receptacles."); *id.*, col. 3, lines 42–44 ("passage of bees from the at least one entrance hole to the at least one receptacle adapter coupling and into an attached receptacle"); *id.*, col. 5, lines 9–12 ("In prototype form, adapter coupling 5 is connected to reducer section 4 with a heat shrink tube to form a permanently attached female threaded coupling for the receptacle."); *id.*, col. 6, lines 42–45 ("A receptacle adapter 44 at the bottom of vertical bore 43 is a friction fit similar to bore 34 in trap entrance unit 3 and allows convenient insertion and removal of clear receptacle 48."); *id.*, col. 8, lines 43–44 ("a receptacle removably attached to the receptacle adapter").

As a result, we construe "receptacle adapter" to mean "a structure configured to receive and help retain a receptacle." Unlike the district court's and BBB's constructions, this construction does not improperly exclude any embodiments. And in contrast to Mr. Blazer's construction, *see, e.g.*, Mr. Blazer's Reply Br. 3 ("a structure—which includes an opening in the trap entrance unit—that is configured or adapted to receive a receptacle"), our construction incorporates both the reception and retention functions that, according to the patent, must be performed by a "receptacle adapter."

Case: 22-1033    Document: 42    Page: 12    Filed: 11/16/2022
Case 2:22-cv-00633-CDS-DJA    Document 1-7    Filed 12/30/22    Page 13 of 13

12                              BLAZER v. BEST BEE BROTHERS LLC

B

The district court's judgment of no infringement—both no literal infringement and no infringement under the doctrine of equivalents—depended on a flawed construction that improperly limited "receptacle adapter" to three embodiments from the specification. *See Blazer*, 2021 WL 4552784, at *5. Because we reject the court's construction, we vacate its judgment of noninfringement. *See, e.g., Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305, 1314 (Fed. Cir. 1999). We leave to the district court on remand the task of applying the correct construction in the first instance upon appropriate factual development, including to issues of literal infringement and infringement under the doctrine of equivalents. We do not decide whether summary judgment would be appropriate under our new construction.

III

For the foregoing reasons, we vacate the judgment of the district court and remand the case for further proceedings consistent with this opinion.

Costs awarded to appellant.

**VACATED AND REMANDED**