FILED
2023 Feb-01  PM 04:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| BEE WAREHOUSE, LLC; <br> DAVIS PRODUCT CREATION <br> AND CONSULTING, LLC d/b/a <br> BEESNTHINGS, <br><br> Plaintiffs, <br><br> v. <br><br> BRIAN BLAZER d/b/a <br> CARPENTER BEE SOLUTIONS, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No.: 1:22-cv-01623-CLM <br> ) **OPPOSED** <br> ) <br> ) <br> ) <br> ) <br> ) |

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION WITH INCORPORATED SUPPORTING BRIEF

Plaintiffs Bee Warehouse, LLC ("Bee Warehouse") and Davis Product Creation and Consulting, LLC d/b/a BeesNThings ("DPCC") (collectively, "Plaintiffs"), by and through their undersigned counsel, move the Court for a preliminary injunction against Defendant Brian Blazer d/b/a Carpenter Bee Solutions ("Blazer") prohibiting Blazer from claiming that the Bee Warehouse Trap (as defined herein) infringes U.S. Patent No. RE46,421 (the "'421 Patent") and ordering Blazer to retract any past claims of infringement. In support of this Motion, the Plaintiffs show the Court as follows:

## Introduction and Factual Background

Plaintiffs filed this action on December 30, 2022. (Doc. 1). In their Complaint, plaintiffs seek declaratory and injunctive relief regarding the non-infringement of the '421 Patent. In support of this Motion, Plaintiffs rely upon the facts as set forth in the Complaint and the declaration of Clifford Davis, Jr. ("Davis Dec.") attached as Exhibit A.

The '421 Patent is directed to carpenter bee traps and has been the subject of extensive litigation around the U.S. The '421 Patent contains twenty-one (21) total claims and two independent claims, namely claims 1 and 13. (Doc. 1, Ex. A). Claim 1, among other things, requires that any infringing bee trap comprise both "a means to shelter an entrance to said hole is provided to reduce the admittance of ambient light" and a "receptacle adapter." (Id.). Claim 13, which is broader in scope than claim 1, requires that any infringing bee trap comprise a receptacle adapter.[1] (Id.). The claims of the '421 Patent have been construed. Specifically, "a means to shelter an entrance to said hole is provided to reduce the admittance of ambient light" has been correctly defined as a means-plus-function claim and the only structure capable of performing the function recited in that claim is the overhanging roof taught in the '421 Patent. (Id.).

---

[1] Claim 1 also includes this limitation.

The Federal Circuit Court of Appeals, in another litigation involving the '421 Patent, recently construed the term "receptacle adapter" as "a structure configured to receive and help retain a receptacle." (Doc. 1, ¶ 16). Furthermore, claim 13 of the '421 Patent requires that an infringing trap comprise a receptacle adapter located at the exit opening of the trap entrance unit, wherein the receptacle adapter is adapted to receive at least one receptacle. (Id. at Ex. A).

DPCC, by and through its distributor, Bee Warehouse and others, manufactures and sells carpenter bee traps. (Doc. 1, ¶ 10). DPCC designed a new carpenter bee trap (based in part on Blazer's allegations of infringement in one of his other many lawsuits) which is sold by Bee Warehouse (the new trap will be referred to as the "Bee Warehouse Trap" herein for simplicity). The photographs below show the Bee Warehouse Trap:



(Id.).[2]

Bee Warehouse was selling/offering for sale the Bee Warehouse Trap on Amazon.com's ("Amazon") online marketplace until Blazer submitted a frivolous, bad-faith, and objectively baseless notice of infringement to Amazon using a process not available to the general public that Blazer received access to via a settlement in a separate lawsuit with Amazon. (Doc. 1, ¶¶ 11-12). Continuing his campaign of bad faith and harassment of DPCC and its customers, Blazer claimed in this notice that the Bee Warehouse Trap infringed the '421 Patent. Upon learning of the notice, the Plaintiffs believed that it must have been a mistake and asked Blazer to withdraw his claim of infringement to Amazon, yet in his typical behavior of bad faith, Blazer refused and once again forced Plaintiffs to seek redress from the courts. (Id. at ¶ 22). Additionally, instead of cooperating, Blazer resorted to conspiracy theory-like rantings about animal killings and Chinese crime lords. (Id.).

## **Argument**

Plaintiffs are entitled to preliminary injunctive relief prohibiting Blazer from claiming infringement of the '421 Patent and forcing him to retract previous claims of infringement regarding the Bee Warehouse Trap. In this case, Plaintiffs can establish all four (4) elements required by the 11th Circuit to secure an injunction

---

[2] Additional photographs are reproduced in Plaintiffs' Complaint. (Doc. 1, ¶10).

because (i) the Bee Warehouse Trap does not infringe any claim of the '421 Patent; (ii) Plaintiffs are suffering irreparable harm; (iii) Plaintiffs' injury outweighs whatever harm may come to Blazer, and (iv) the injunction sought is not adverse to the public interest. See Citizens for Police Accountability Political Committee v. Browning, 572 F.3d 1213, 1217 (11th Cir. 2009) (To secure preliminary injunctive relief, plaintiffs must prove four elements: (1) a substantial likelihood of success on the merits; (2) irreparable injury absent an injunction; (3) the injury outweighs whatever damage an injunction may cause the opposing party; and (4) an injunction is not adverse to the public interest.). Importantly, "[n]one of these factors possess a fixed quantitative value; they are applied on a case-by-case, sliding-scale basis. Where one or more of the factors is very strongly established, this will ordinarily be seen as compensating for a weaker showing as to another or others." Knights of the Ku Klux Klan v. East Baton Rouge Parish School Bd., 578 F.2d 1122, 1125 (5th Cir. 1978). Furthermore, while each must be proven, the likelihood of success on the merits "is generally the most important of the four factors." Gonzalez v. Governor of Ga., 978 F.3d 1266, 1271 n.12 (11th Cir. 2020).

    1.    <u>Plaintiffs will succeed on the merits.</u>

A determination of infringement, or lack thereof as in this case, of a U.S. patent, requires a two-step analysis. PC Connector Solutions LLC v.

SmartDiskCorp., 406 F.3d 1359, 1362 (Fed. Cir. 2005). First, the court must ascertain the scope of the claims as a matter of law. Id.; Markman v. Westview Instruments, Inc., 52 F.3d 967, 970–71 (Fed. Cir. 1995). In the second step of infringement analysis, the court determines whether the properly construed claims cover the accused device, either literally or under the doctrine of equivalents. PC Connector, 406 F.3d at 1362, 1364. Although this second step is a question of fact, when there are no genuine issues of material fact in dispute, a grant of summary judgment is proper. Id. at 1364. Literal infringement requires that each and every claim limitation appear in an accused product. Bayer AG v Elan Pharm. Research Corp., 212 F.3d 1241, 1247 (Fed. Cir. 2000). If an accused product does not infringe an independent claim, it also does not infringe any claim depending thereon. Wahpeton Canvas Co. v. Frontier, Inc., 870 F.2d 1546, 1553 (Fed. Cir. 1989).

Where literal infringement is not present, infringement under the doctrine of equivalents may be found where the "accused product or process contain[s] elements identical or equivalent to each claimed element of the patented invention." Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997). "Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform." Graver Tank & Mfg. Co. v. Linde Air

Products Co., 339 U.S. at 605, 609 (1950). Each element contained in a patent claim is deemed to be material, and the doctrine of equivalents must be applied to each element of the claim, not to the invention as a whole. Warner-Jenkinson Co. v. Hilton Davis Chemical Co., 520 U.S. 17, 29 (1997). To find infringement under the doctrine of equivalents, the accused product must contain each limitation of the claim in the patented invention or its equivalent. Id. at 40. "An element in the accused product is equivalent to a claim limitation if the differences between the two are insubstantial. The analysis focuses on whether the element in the accused device 'performs substantially the same function in substantially the same way to obtain the same result' as the claim limitation." AquaTex Indus., Inc. v. Techniche Solutions, 419 F.3d 1374, 1382 (Fed. Cir. 2005) (quoting Graver Tank & Mfg.Co., 339 U.S. at 608). However, the doctrine of equivalents applies only in exceptional cases and is not to be turned into in the second prong of every claim of infringement, regularly available to extend the scope of patent claims.

The '421 Patent contains two (2) independent claims, claims 1 and 13. Both claims require that an infringing bee trap contain a receptacle adapter. A "receptacle adapter" has been defined as "a structure configured to receive and help retain a receptacle." (Doc. 1, ¶ 16). The Bee Warehouse Trap does not contain a receptacle adapter. There is no structure that both receives a receptacle and helps to retain it.

Rather, the receptacle is secured to the wooden housing by two (2) screws. (Ex. A, Davis Dec., ¶ 12.) Without the screws, the wooden housing and the receptacle are not joined together in any manner. (Id.). Consequently, the Bee Warehouse Trap does not literally infringe either claim 1 or 13 of the '421 Patent. Additionally, since those independent claims are not infringed, no claim dependent therefrom can likewise be literally infringed.

The Bee Warehouse Trap also does not infringe any claim of the '421 Patent under the doctrine of equivalents. As discussed above, to find infringement under the doctrine of equivalents, the accused product must contain each limitation of the claim in the patented invention or its equivalent, and an element in the accused product is equivalent to a claim limitation if the differences between the two are insubstantial. The analysis focuses on whether the element in the accused device performs substantially the same function in substantially the same way to obtain the same result as the claim limitation. Significantly, the doctrine of equivalents applies only in exceptional cases and is not to be turned into in the second prong of every claim of infringement, nor is it regularly available to extend the scope of patent claims or to read out a claim limitation. Here, it is clear that the Bee Warehouse Trap does not have a "receptacle adapter" that performs substantially the same function in substantially the same way to obtain the same result as the receptacle adapter

claimed by the '421 Patent. Furthermore, although Plaintiffs are entitled to the requested injunctive relief simply because none of the claims of the '421 Patent are infringed due to the lack of a receptacle adapter, claim 1 (and all claims that depend therefrom) are additionally not infringed because the Bee Warehouse Trap does not comprise "a means to shelter an entrance to said hole is provided to reduce the admittance of ambient light" since the trap does not comprise an overhanging roof.

To be sure, the differences between the Bee Warehouse Trap and the '421 Patent claims are important. The trap taught by the '421 Patent is designed so that a plastic beverage bottle can be attached to the trap body–hence the requirement for a receptacle adapter as outlined in every claim. DPCC saw the receptacle adapter as a potential point of failure and designed the Bee Warehouse Trap so that a receptacle adapter is not necessary. The Bee Warehouse Trap does not have any intentionally removable parts; thus, there is no need for a receptacle adapter. This is a superior design as there are fewer points of failure and the customer will not need to hunt for a plastic bottle that will fit the receptacle adapter.

Blazer's claims of infringement are objectively baseless and made in bad faith as no reasonable person could realistically expect success on the merits. When a patentee is prevented from communicating its patent rights, "[w]e apply federal patent law and precedent relating to the giving of notice of patent rights, in reviewing

the grant of an injunction against the giving of such notice...." Mikohn Gaming Corp. v. Acres Gaming, Inc., 165 F.3d 891, 898 (Fed. Cir. 1998). The Federal Circuit has further held that "federal law requires a showing of bad faith in order to bar such communications." Id. The Supreme Court elaborated on the meaning of "objectively baseless," explaining that "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). Objective baselessness can be demonstrated by a showing that the patents at issue are "obviously invalid or plainly not infringed." Id.; Zenith Elec. Corp. v. Exzec, Inc., 182 F.3d. 1340, 1354 (Fed. Cir. 1999) ("Obviously, if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith is made out.").

In this case, it is clear and easy to understand that, when comparing the Bee Warehouse Trap to the claims of the '421 Patent, the Bee Warehouse Trap does not infringe. Further evidence of both Blazer's subjective and objective bad faith is that when requested to withdraw the notice of infringement to Amazon, he resorted to wild and irrelevant conspiracy theories rather than provide any sort of objective analysis of the claims of the '421 Patent against the Bee Warehouse Trap.

Accordingly, for all the reasons discussed above, the Plaintiffs have established a likelihood of success on the merits as the Bee Warehouse Trap does not infringe the '421 Patent.

2. <u>Plaintiffs are suffering irreparable harm.</u>

The showing of irreparable harm is "the sine qua non of injunctive relief." <u>Siegel v. LePore</u>, 234 F.3d 1163, 1176 (11th Cir. 2000). The moving party must generally establish that there is a continuing harm that cannot be adequately redressed by final relief on the merits and for which monetary damages cannot provide adequate compensation. <u>Georgia v. U.S.</u>, 398 F. Supp. 1330, 1344 (S.D. Ga. 2019); <u>see also</u> <u>Allstate Ins. Co. v. Harvey Family Chiropractic</u>, 677 F. App'x 716, 718 (2nd Cir. 2017) ("Irreparable harm exists 'where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action, the parties cannot be returned to the positions they previously occupied.'").

Here, Blazer has made bad-faith claims of patent infringement to disrupt Bee Warehouse's relationship with Amazon. This relationship is valuable and requires significant effort by Bee Warehouse to maintain. (Ex. A, Davis Dec., ¶¶ 3-9). Yet not only has Blazer succeeded in removing a non-infringing product from Amazon, but his false allegations could also result in the loss of Bee Warehouse's account. (<u>Id.</u> at ¶ 10). The complete loss of sales on Amazon by Bee Warehouse would be a

devastating blow to its business as Amazon is the world's largest online retailer. (Id. at ¶ 11).

Blazer's ability, without any objective proof, to prevent Bee Warehouse from selling on Amazon can only be remedied by Blazer submitting a notice of retraction to Amazon. When Bee Warehouse requested that Blazer do just that, he refused (and still failed to provide any objective evidence of infringement). Additionally, the season for selling carpenter bee traps is very short (February to May). (Ex. A, Davis Dec., ¶ 12). Blazer knows that delaying Bee Warehouse a few months will damage its chances of having a profitable season. (Id.). Blazer's actions have caused Bee Warehouse to be far behind in building its positive relationship with Amazon and getting higher in the search rankings for potential customers. (Id.). Simply put, absent the Court's intervention and grant of the requested injunction, there is no way that the Plaintiffs can be placed in the position they were in before Blazer submitted the notice of infringement to Amazon. As such, Plaintiffs will continue to suffer irreparable harm until injunctive relief is granted.

    3.    <u>The Equities Clearly Favor Plaintiffs, Warranting the Issuance of a Preliminary Injunction.</u>

In this case, a preliminary injunction is critically necessary to prevent Bee Warehouse from losing all of its selling rights on Amazon. Bee Warehouse has faced

and will continue to face a likely and grievous threat to its business by not being able to reach Amazon's customers for any product. (Ex. A, Davis Dec., ¶ 11). If he chooses, Blazer can appear in this action, file a counterclaim, and assert a claim of patent infringement to the Court. And if he should happen to prevail, an award of monetary damages can be awarded against the Plaintiffs and the Court can fashion an appropriate injunction. However, only in this Court will Plaintiffs' request for preliminary injunctive relief be entertained.

Furthermore, it is vitally important to recognize that Amazon presumes that Blazer's patent is infringed solely because of his say-so, and it has no forum for considering the Plaintiffs' overwhelming evidence that it is not. Thus, Blazer has nothing to lose and everything to gain by claiming infringement with Amazon as he can eliminate competition with virtual impunity. By contrast, Plaintiffs' entire business on Amazon is at stake—one which it has expended considerable resources to develop. Consequently, given that the Plaintiffs' only recourse is through this Court via injunctive relief and Blazer will certainly have the opportunity to oppose it and/or seek legal remedies of his own, the equities favor the Plaintiffs here.

    4.    <u>The Public Interest Will Not Be Harmed by the Issuance of the Requested Injunction.</u>

Although it goes without saying, the public has an interest in legitimate competition. To the extent that Blazer has enforceable patent rights and a viable patent infringement case to make, he can counterclaim in this Court and receive compensation and an injunction under the patent laws. Blazer has exploited a hole in Amazon's enforcement of IP rights on its platform, as Amazon assumes that all patents are legitimate and enforceable. The public will not be harmed by a temporary return to the status quo ante, which would allow fair competition between products, and Blazer would still be entitled to come forward and claim patent infringement in this Court if he so desires.

But until Blazer proves patent infringement in a court of law, the public is best served by open competition. Plaintiffs and Blazer should continue to compete in the marketplace free of bogus and unchallenged allegations of patent infringement. Accordingly, the public interest will not be harmed by the grant of the requested injunction, but instead would be well served by it.

    5.    <u>Plaintiffs should not be required to post any bond.</u>

Federal Rule of Civil Procedure 65(c) provides that a court may issue a preliminary injunction "only if the movant gives security in an amount that the court

considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." While a bond is therefore normally required, "it is well-established that the amount of security required by [Rule 65(c)] is a matter within the discretion of the trial court, and the court may elect to require no security at all." BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., LLC, 425 F.3d 964, 971 (11th Cir. 2005) (internal quotations and punctuation omitted). In this case, because Plaintiffs have a high probability of succeeding on the merits of their claims and Blazer has no protectable interest in falsely claiming patent infringement as demonstrated above, the Court should not require any bond to be posted by Plaintiffs. See Harris v. Hous. Auth. of City of Daytona Beach, No. 6:01–cv–254, 2001 WL 36404273, at *5 (M.D.Fla. Apr. 25, 2001) (not requiring a bond where the preliminary injunction would result in minimal potential harm to the defendant); Univ. Books & Videos, Inc. v. Metro. Dade County, 33 F.Supp.2d 1364, 1374 (S.D.Fla.1999) (not requiring a bond where the movant had a high probability of succeeding on the merits of its claim).

## Conclusion

For all the reasons stated above, the Court should enter a preliminary injunction in favor of the Plaintiffs prohibiting Blazer from claiming that the Bee

Warehouse Trap infringes the '421 Patent and ordering Blazer to retract any past claims of infringement.

            *S/C. Gregory Burgess*
            C. Gregory Burgess (ASB-1519-R79C)
            Jeremy A. Smith (ASB-1731-J73S)

            **Attorneys for plaintiffs Davis Product Creation and Consulting, LLC d/b/a BeesNThings & Bee Warehouse, LLC**

**OF COUNSEL:**

**LANIER FORD SHAVER & PAYNE P.C.**
Post Office Box 2087 (35804)
2101 West Clinton Avenue, Suite 102
Huntsville, Alabama 35805
Telephone Number: (256) 535-1100
Facsimile Number: (256) 533-9322
Email: cgb@lanierford.com
    jas@lanierford.com

16

## CERTIFICATE OF SERVICE

  I hereby certify that on the 1st day of February 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and served a copy of this motion on Defendant via electronic mail at blazeranimals@earthlink.net and via U.S. First Class mail at the following address:

Brian Blazer
d/b/a Carpenter Bee Solutions
230 County Road 880
Heflin, Alabama 36264

               *S/C. Gregory Burgess*
               C. Gregory Burgess