UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **BEE WAREHOUSE, LLC, et al.,**<br>    Plaintiffs,<br><br>v.<br><br>**BRIAN BLAZER,**<br>    Defendant. | **Case No. 1:22-cv-1623-CLM** |

## MEMORANDUM OPINION

Bee Warehouse, LLC ("Bee Warehouse") and David Product Creation and Consulting, LLC d/b/a BeesNThings ("DPCC") (collectively, "Plaintiffs")'s seek partial summary judgment as to Count I of Brian Blazer d/b/a Carpenter Bee Solutions ("Blazer")'s Counterclaim alleging patent infringement. (Doc. 35). Because no reasonable juror could find that Plaintiffs' trap infringes Blazer's '421 Patent, the court will **GRANT** Plaintiffs' motion.

### I. BACKGROUND

Both Blazer and Plaintiffs patent, make and sell carpenter bee traps. Blazer's original patent, U.S. Patent No. 8,375,624 ("'624 Patent"), was issued in February 2013. Blazer's '624 Patent was broadened and re-issued in June 2017 as U.S. Patent No. RE46,421 ("'421 Patent"). This case is about possible infringement of Blazer's '421 Patent.

The parties have a long history of suing each other for patent infringement and related acts. This case began when Blazer reported to Amazon that certain carpenter traps sold by Bee Warehouse ("Bee Warehouse Trap") infringed certain claims of Blazer's '421 Patent. Based on Blazer's report, Amazon pulled the Bee Warehouse Trap from its website. To date, Plaintiffs cannot sell the Bee Warehouse Trap on Amazon.

Plaintiffs asked Blazer to withdraw his claim of infringement with Amazon. Blazer refused. So on December 30, 2022, Plaintiffs sued Blazer for declaratory and injunctive relief regarding the non-infringement of Blazer's

1

'421 Patent. (*See* Doc. 1). In response, Blazer filed an Answer, Affirmative Defenses, and a Counterclaim alleging infringement of Claims 13-17 and 21 of the '421 Patent in Count I. Blazer's Count I is the relevant claim.

Shortly after filing this lawsuit, Bee Warehouse filed a motion for a preliminary injunction. (Doc. 3). This court determined that Plaintiffs had shown that they were substantially likely to succeed on the merits of Blazer's claim of infringement of the '421 Patent. (*See* Doc. 32). In other words, the court determined that the Bee Warehouse Trap most likely does not infringe any claim of Blazer's patent. (*Id.*). But the court denied the motion for a preliminary injunction because it determined that Blazer did not act in bad faith—a finding required for the relief that Plaintiffs sought. (*Id.*).

On May 16, 2023, Plaintiffs filed the motion for partial summary judgment on Blazer's Count 1 that the court now considers. (Doc. 35).

## II.   LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Issues of fact are "genuine" only if a reasonable jury, considering the evidence present, could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A fact is "material" if it might affect the outcome of a case under governing law. *Id.* In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the lack of genuine issues of material fact. *Celotex,* 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324.

In a patent case, when the nonmoving party will bear the burden of proof at trial, the moving party discharges its burden at the summary judgment stage by "stating that the patentee [has] no evidence of infringement and pointing to the specific ways in which accused systems [do] not meet claim limitations." *Exigent Tech., Inc. v. Atrana Sols., Inc.,* 442 F.3d 1301, 1309 (Fed. Cir. 2006).

## III. DISCUSSION

### A. Plaintiffs' motion is ripe for review.

Plaintiffs filed this motion for partial summary judgment before the close of discovery. Ordinarily, dispositive motions are filed after the close of discovery, so both parties have a chance to discover the relevant facts related to their claims. But there are no relevant facts for the parties to discover on Blazer's claim that the Bee Warehouse Trap infringes Blazer's '421 Patent. The court has everything it needs to make that determination—including a physical copy of the trap.

Yet Blazer argues that the motion is premature. Blazer says he is entitled to a claim construction hearing so that he can challenge the construction this court gave the "means for sheltering" limitation in Claim 1 in another case featuring Blazer and DPCC.

The court finds that it needn't wait for a second *Markman* hearing on this term for two reasons. First, a second hearing would be repetitive. This court has already construed "a means to shelter an entrance to said hole" as a means-plus-function claim and found that the only structure able to perform the function recited in that claim is the overhanging roof taught in the '421 Patent. (*See* Doc. 36-13). The court made this determination after reviewing briefs submitted by both parties, and a full evidentiary hearing in the First Action. The court rejected Blazer's proposed construction in the First Action and sees no reason to revisit it now. *See TM Patents v. Int'l Bus. Mach. Corp.*, 72 F. Supp. 2d 370, 375 (S.D.N.Y. 1999) (holding that where plaintiff had a full and fair opportunity to litigate the meaning of claims at an earlier claim construction, that construction was binding on the plaintiff); *Abbott Labs. v. Dey*, 110 F. Supp. 2d 667, 669–71 (N.D. Ill. 2000) (holding that the doctrine of issue preclusion barred plaintiffs from relitigating claim construction issues decided in an earlier infringement action).

Second, the "means to shelter" limitation is irrelevant to Blazer's claim. Blazer's present allegation of infringement "is limited to claims 13-17 and 21 of the '421 Patent." (*See* Doc. 15, p. 7). None of those claims include the "means to shelter" limitation because Blazer broadened the original '624 Patent, in part, to remove the "means to shelter" limitation. So holding another *Markman* hearing on the "means to shelter" limitation is pointless.

To be sure, Blazer can appeal this court's construction. But this court will not pause to decide the same issue twice when it's not relevant to the claim at hand. Because there are no facts for the parties to discover, and because this court has already construed the claim Blazer plans to challenge, the court finds that Plaintiffs' motion is ripe for review.

**B.     The Bee Warehouse trap does infringe the '421 Patent.**

A determination of non-infringement of a U.S. patent requires a two-step analysis. *See PC Connector Sols., LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1362 (Fed. Cir. 2005). First, the court determines the scope and meaning of the patent claims asserted. *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d, 13311339 (Fed. Cir. 2003) (citation omitted). This step is often called "claim construction," and is a question of law. *Id.* (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc)). Second, the properly construed claims are compared to the allegedly infringing device. *Id.* (citation omitted). Step two requires a determination that every claim limitation or its equivalent be found in the accused device. *Id.* (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997)). Those determinations are questions of fact, yet summary judgment is proper when there are no genuine issues of material fact in dispute. *PC Connector*, 406 F.3d at 1364. The patent owner bears the burden of proving infringement and must meet its burden by a preponderance of the evidence. *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1998).

  *1. Claim Construction*

The first step in most infringement suits is the procedure called "claim construction," where the scope of the claim is defined by the court. *Abbott Lab'ys v. Sandoz, Inc.*, 544 F.3d 1341, 1358 (Fed. Cir. 2008). But as explained below, courts have already construed the relevant claim here.

The '421 Patent contains two independent claims: Claim 1 and Claim 13. As explained, Blazer limits his infringement allegation to independent Claim 13, and its dependent claims 14-17, and 21. If an accused product does not infringe an independent claim—here, Claim 13—it also does not infringe any dependent claims. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989).

Claim 13 reads:

> 13. A carpenter bee trap, comprising:
>
> a trap entrance unit formed of wood or a wood substitute, wherein at least one side of the trap entrance unit has at least one entrance hole that extends from outside the trap entrance unit to an interior of the trap entrance unit, wherein the at least one entrance hole extends substantially horizontally or at an upward angle with a size and shape configured to provide a primary attractant for carpenter bees, and wherein the trap entrance unit further comprises an exit opening for providing an exit path from the interior of the trap entrance unit; and
>
> a receptacle adapter located at the exit opening of the trap entrance unit, wherein the receptacle adapter is adapted to receive at least one receptacle and is adapted so as to allow at least some ambient light to enter the interior of the trap entrance unit via the exit opening, thereby providing a secondary attractant for carpenter bees.

U.S. Patent Reissue No. 46,421 (issued June 6, 2017).

The Federal Circuit has already construed Claim 13, and that decision is binding on this court. *See Blazer v. Best Bee Bros., LLC, et al.*, No. 22-1033, 2022 WL 16954848, slip op. at 11 (Fed. Cir. Nov. 16, 2022).

At the preliminary injunction hearing, the parties agreed that under the Federal Circuit's construction, a "receptacle adapter" must include: (1) a structure; (2) located at the exit opening of the trap entrance unit; (3)

5

configured to receive at least one receptacle; (4) configured to help retain a receptacle; and (5) that allows at least some ambient light to enter the interior of the trap entrance unit via the exit opening. (Doc. 24, pp. 13–14). So the court carries this construction of "receptacle adapter" on to step two.

### 2. *Comparison*

Step two requires the trier of fact to "compar[e] the properly construed claims to the device accused of infringing." *Markman*, 52 F.3d at 976. This step requires a determination of whether the properly construed claims cover the accused device, either literally or under the doctrine of equivalents. *See PC Connector*, 406 F.3d at 1364–65.

A product can infringe in two ways: (1) literal infringement, or (2) infringement under the doctrine of equivalents. *Id.* at 1364. "Literal infringement requires that the accused device embody every element of the claim." *Id.* (quoting *Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.*, 757 F.2d 255, 257 (Fed. Cir. 1985)). And where literal infringement is not present, infringement under the doctrine of equivalents may be found where the "accused product of process contain[s] elements identical or equivalent to each claimed element of the patented invention." *Warner-Jenkinson Co.*, 520 U.S. at 40.

### A. *Literal Infringement*

"Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device, i.e., when the properly construed claim reads on the accused device exactly." *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996) (citation omitted). Again, the parties agree that under the Federal Circuit's construction, a "receptacle adapter" must include these elements: (1) a structure; (2) located at the exit opening of the trap entrance unit; (3) configured to receive at least one receptacle; (4) configured to help retain a receptacle; and (5) that allows at least some ambient light to enter the interior of the trap entrance unit via the exit opening. The issue before the court is whether the Bee Warehouse Trap contains such a receptacle adapter.

Blazer argues that two structures constitute a receptacle adapter. First, Blazer asserts that the bottom of the trap entrance unit, together with the plastic lip around the receptacle, serve as a "receptacle adapter." (*See* Doc. 44,

6

p. 13). His second theory is that the Philips-head screws in the Bee Warehouse Trap serve as a receptacle adapter. (*See* Doc. 44, p. 15). The court will address each theory in turn.[1]

*Alleged Receptacle Adapter #1: Bottom of Trap Entrance Unit + Lip*

Blazer's first theory is that the bottom of the trap entrance unit (*i.e.*, the wooden housing unit), together with the plastic lip around the recetable, serve as a "receptacle adapter." Assuming that the friction fit between the two pieces is a structure, the spot where the receptacle's plastic lip fits over the wooden edge of the entrance unit (red circle) is not "located at the exit opening of the trap entrance unit" (blue arrow) as required by Claim 13. Rather, it's as far from the exit opening as possible. No reasonable juror would find otherwise.




To demonstrate the point, the court contrasts the Bee Warehouse Trap with a previous DPCC design that this court recently held ***might*** infringe Claim 13 because the location of the friction fit between the receptacle and the trap entrance unit (left picture, Box E) was located ***at*** the exit opening of the trap entrance unit (left picture, Box D):

---

[1] At the preliminary injunction hearing, Blazer advanced a third theory—that the combination of (1) the bottom of the trap entrance unit, (2) the clear plastic lip around the receptacle, and (3) the screws which secure the receptacle to the trap entrance unit constitute a receptacle adapter. Blazer does not appear to re-raise that theory, so the court need not address it. *See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 598 (11th Cir. 1995) (en banc). But even if Blazer had re-raised it, the theory fails because the combination of these three items still is not located at the exit opening of the trap.




*Old Design (at exit opening)*  *New Design (away from exit opening)*

*See Davis Prod. Creation & Consult., LLC v. Blazer*, Case No. 1:19-cv-848, 2023 WL 4354212, at *15 (N.D. Ala. July 5, 2023). As Plaintiffs' counsel explained, Plaintiffs moved the location of the friction fit between the housing unit and the trap entrance unit away from the exit opening in the new Bee Warehouse Trap design because Blazer argued that previous designs (like the one above) infringed Claim 13 because those designs placed the receptacle adapter at the exit opening. As the pictures show, Plaintiffs successfully moved the adapter (if any) away from the exit opening and thus removed their newest trap from the scope of Claim 13. As a result, the court finds that there is no genuine dispute of material fact as to whether the bottom of the trap entrance unit, together with the plastic lip, serves as a receptacle adapter.

*Alleged Receptacle Adapter #2: Philips-head Screws*

Blazer has a second theory: the Philips-head screws also serve as a "receptacle adapter." This is true, Blazer says, whether the screws come in from the top, through the wooden trap entrance unit, or from the bottom, through the plastic receptacle. According to Blazer, the screws "help retain" the receptacle, and therefore satisfy the Federal Circuit's claim construction.

That may be true, but under the Federal Circuit's construction of Claim 13, a structure is not a receptacle adapter simply because it "helps retain" a receptacle. There are five requirements, and Blazer's alleged receptacle adapter does not meet all five.

For example, the screws (red circle) are not located at the exit opening of the trap entrance unit (blue arrow).



Nor do the screws "receive" the receptacle. Instead, the screws go through the receptacle, and into the main trap entrance unit.

For these reasons, independently and collectively, the court finds that no reasonable juror would find that the Philips-head screws are receptacle adapters under Claim 13.

Having reviewed the parties' filings, and having held and inspected a physical copy of the Bee Warehouse Trap, the court finds that no reasonable juror could find that the Bee Warehouse Trap contains a receptacle adapter that performs all of the receptacle adapter functions of Claim 13, as construed by the Federal Circuit.

### B. Doctrine of Equivalents

Blazer's claim fares no better under the doctrine of equivalents. "An element in the accused product is equivalent to a claim limitation if the differences between the two are 'insubstantial' to one of ordinary skill in the art." *Eagle Comtronics v. Arrow Commc'n Lab'ys, Inc.*, 305 F.3d 1303, 1315 (Fed. Cir. 2002). "Relevant to the insubstantial differences inquiry is whether the missing element in the accused device 'performs substantially the same function in substantially the same way to obtain the same result' as the claim limitation." *Id.* (citing *Graver Tank & Mfg. Co.*, 339 U.S. 605, 608 (1950)). "Consideration must be given to the purpose for which an ingredient is used in

a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform." *Graver Tank*, 339 U.S. at 609.

The Supreme Court identified two possible approaches to analyze whether there is equivalence: the "insubstantial differences" approach and the "triple identity test." *Warner-Jenkinson Co.*, 520 U.S. at 39–40. The "insubstantial differences" test looks to whether the element asserted to be an equivalent in the accused device is insubstantially different from the claimed element. *Id.* The "triple identity test" focuses on: (1) the function served by a particular claim element; (2) the way that element serves that function; and (3) the result thus obtained by that element. *Id.* The "essential inquiry" under either test is whether the "accused product . . . contain[s] elements identical or equivalent to each claimed element of the patented invention." *Id.* at 40.

No matter which test is applied, the court finds that the Bee Warehouse Trap does not contain elements identical or equivalent to each claimed element of the '421 Patent. The combination of the friction fit between the bottom of the trap entrance unit and the receptacle's overlapping clear plastic lip and the Phillips-head screws do not "perform[ ] substantially the same function in substantially the same way" as the receptacle adapter described in the '421 Patent. *Eagle Comtronics*, 305 F.3d at 1315 (citing *Graver Tank*, 339 U.S. at 608). While the combination of the friction fit and screws may perform the similar function of joining the entrance unit and receptacle, they do not perform that function in substantially the same way. These structures (assuming they are structures) are placed away from the trap entrance unit, and the receptacle lip envelopes the main trap entrance unit while the screws hold the units together—a retention concept not envisioned by Claim 13 or the drawings. As a result, no reasonable juror could find that Blazer satisfies the doctrine of equivalents.

## IV. CONCLUSION

For the reasons explained above, the court **GRANTS** Bee Warehouse's motion for partial summary judgment (doc. 35). The court will enter a separate order that carries out this ruling and **DISMISSES WITH PREJUDICE** Count 1 of Brian Blazer d/b/a Carpenter Bee Solutions' Counterclaim alleging patent infringement.

**DONE** on July 13, 2023.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE