FILED

2024 Jan-03  AM 08:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

**BEE WAREHOUSE, LLC, et al.,**
    Plaintiffs,

**v.**

**BRIAN BLAZER,**
    Defendant.

**Case No. 1:22-cv-1623-CLM**

## <u>MEMORANDUM OPINION</u>

Plaintiffs Bee Warehouse, LLC and Davis Product Creation and Consulting, LLC d/b/a BeesNThings ("DPCC"), (collectively, "Bee Warehouse") and Defendant Brian Blazer patent, make, and sell carpenter bee traps. Blazer reported to Amazon that Bee Warehouse's carpenter bee traps infringed certain claims of his '421 patent. As a result of this complaint, Amazon stopped letting Bee Warehouse sell its Bee Warehouse Trap on Amazon. So Bee Warehouse sued Blazer, alleging (among other things) state-law claims for tortious interference with business/contractual relations and bad-faith claims of patent infringement in violation of Ala. Code § 8-12-A-2. (*See* Doc. 1).

Blazer countersues Bee Warehouse for falsely marking its Bee Warehouse traps. (Doc. 33). Bee Warehouse seeks dismissal of the false marking claim (doc. 38), and Blazer seeks summary judgment on Bee Warehouse's state-law claims (doc. 46). For the reasons stated within, the court **WILL GRANT** Bee Warehouse's motion to dismiss (doc. 38) and **WILL DENY AS PREMATURE** Blazer's motion for summary judgment (doc. 46).

**BACKGROUND**

**A.     Facts Related to Motion to Dismiss**

Blazer added his false marking counterclaim on May 5, 2023, the last day he could amend his pleadings without leave of court. (Doc. 33). In response to Bee Warehouse's motion to dismiss, Blazer has proposed a second amended answer that he says addresses any concerns about whether he has adequately pleaded a false marking claim. (Doc. 45-1). So the court starts by detailing the facts alleged in Blazer's operative counterclaim, then details Blazer's proposed amendments.

1. <u>False marking claim, as pleaded</u>: The packaging of the Bee Warehouse traps states, "This product is covered by U.S. Patent No. D923,742."



The '742 patent is a design patent covering an ornamental design for a bee trap. Below is an exploded view of the covered bee trap design:



Blazer says the Bee Warehouse trap is not of the same design shown in the '742 patent and is obviously not covered by that patent. Because the differences in the claimed design and the Bee Warehouse trap are obvious to any observer, Bee Warehouse knew or should have known that the '742 patent does not cover the Bee Warehouse trap. And the false marking of the Bee Warehouse trap with the '742 patent has economically harmed Blazer by causing actual confusion in the marketplace, potential sellers to refuse to deal with Blazer, and infringers to refuse to take a license on Blazer's patent.

2. <u>Blazer's proposed amendments</u>: Bee Warehouse's motion to dismiss says that Blazer didn't adequately plead (a) that he suffered a competitive injury from Bee Warehouse's false mark, or (b) that Bee Warehouse intended to deceive the public with the alleged false mark. So Blazer's proposed amendments to the counterclaim attempt to address these alleged pleading deficiencies.

Blazer alleges that after he filed his false marking counterclaim, Bee Warehouse changed its Amazon listing for the Bee Warehouse trap to state, "there may be a typo on your product's label in regards to the patent number." A similar message now also appears on Bee Warehouse's website: "There may be a typo on the label of the product you receive." Still, Bee Warehouse continues to sell falsely marked bee traps through its own website, on Amazon, and at retail stores, such as Lowe's and Home Depot.

And Blazer says that Clifford Davis, the managing member of DPCC and Bee Warehouse, has a long history of falsely marking his products. For example, he has repeatedly marked his various trap designs with the '611 patent. But he knew that the '611 patent required the claimed housing to include no bait and that he used bait in his bee traps.

DPCC and Bee Warehouse have also falsely-marked their side-jar traps with design patents that cover only bottom-jar designs. For example, they have marked side-jar traps with the '426 patent, which claims a bottom-jar design:



Blazer says that the confusion caused by Bee Warehouse's false mark has harmed him. For example, customers have contacted Blazer, mistakenly believing Blazer sold the traps because they were marked as patented, and Blazer is the owner of the patent covering carpenter bee traps. Retailers have also refused to buy from Blazer's licensees and instead bought the Bee Warehouse traps because they were marked as patented. Finally, patent infringers have refused Blazer's offer for a license, at least in part, because of the false marking on the Bee Warehouse traps.

**B.   Facts Related to Motion for Summary Judgment**

Blazer's motion for partial summary judgment seeks dismissal of Bee Warehouse's claims for tortious interference and bad-faith assertion of patent infringement. Blazer asserts that federal patent law preempts these state-law claims because the court denied Bee Warehouse's motion for preliminary injunction for failing to prove that Blazer acted in objective bad faith when he asserted that the Bee Warehouse trap infringed his patent.

The court's preliminary injunction order found that Bee Warehouse hadn't proven objective bad faith for three reasons. First, Blazer changed his position about whether the Bee Warehouse trap infringed his patent only after the Federal Circuit defined "receptacle adapter" differently than this court. Second, Blazer honestly believed that he would face financial consequences for making improper claims of infringement to Amazon. Third, Blazer sought advice from his lawyer before making claims of infringement.

DISCUSSION

## I.    Motion to Dismiss (doc. 38)

The two elements of a false marking claim are: (1) marking an unpatented article, and (2) intent to deceive the public. *See Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011). And only those who have suffered a competitive injury resulting from the false marking have statutory standing to bring a false marking claim. *See* 35 U.S.C. § 292(b). The court starts with standing.

### A.    False Marking Claim, As Pleaded

1. <u>Competitive injury</u>: Bee Warehouse argues that Blazer lacks standing because Blazer hasn't shown competitive injury. A competitive injury is a "wrongful economic loss caused by a commercial rival, such as the loss of sales due to unfair competition; a disadvantage in a plaintiff's ability to compete with a defendant, caused by the defendant's unfair competition." *Sukumar v. Nautilus, Inc.*, 785 F.3d 1396, 1400 (Fed. Cir. 2015) (cleaned up).

Bee Warehouse brings both a facial and factual attack on Blazer's assertion of competitive injury. "A facial attack challenges whether a plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021) (quotations omitted). "A factual attack, in contrast, challenges the existence of subject matter jurisdiction irrespective of the pleadings, and extrinsic evidence may be considered." *Id.* (quotations omitted).

*a. Facial attack:* In its facial attack, Bee Warehouse says that Blazer has failed to allege generally or specifically that he is a competitor in the carpenter bee trap market. But Blazer has alleged that he "is the owner, by assignment, of all right, title, and interest in the '421 patent," which covers carpenter bee traps. (*See* Doc. 33 ¶¶ 9–11). And Blazer says that the "false marking of the Bee Warehouse bee trap . . . has caused significant economic damage to Blazer in the form of at least actual confusion in the marketplace; potential sellers refusing to deal with Blazer, and infringers refusing to take a license to Mr. Blazer's patent." (*Id.* ¶ 42). Accepting these allegations as

5

true, it's reasonable to infer that Blazer is a competitor in the carpenter bee trap market who has suffered economic loss from the alleged false marking. So Blazer has plausibly alleged that he has standing to bring a false marking claim against Bee Warehouse.

*b. Factual attack:* In assessing Bee Warehouse's factual attack on Blazer's standing, the court may consider extrinsic evidence outside the four corners of Blazer's complaint. *See Kennedy*, 998 F.3d at 1230. In fact, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

Bee Warehouse's factual attack focuses on Blazer's deposition in Case No. 1:19-cv-848. As Bee Warehouse notes, Blazer testified in his deposition that he only ever sold carpenter bee traps through his website and that he had turned his website over to his licensees years ago. (Doc. 43-1 at 33). And Blazer's Facebook page for Carpenter Bee Solutions, his carpenter bee trap business, hasn't been updated since 2016. (Doc. 39-3). Plus, Blazer's answer in Case No. 1:19-cv-848 denied that Blazer owns, maintains, or operates www.carpenterbeesolutions.com.

But Blazer also testified that he turned over his website to boost his licensees' sales and that he had a financial incentive in seeing their sales increase. (Doc. 43-1 at 51). And Bee Warehouse doesn't dispute that Blazer's proposed amended counterclaim adequately alleges competitive injury by stating (a) that the false mark has caused retailers to not buy from Blazer's licensees, and (b) that the false mark has partly caused patent infringers to not accept Blazer's offer of a license. The court agrees with Blazer that if he can show that the false mark is adversely affecting the royalties he receives from his licensees, he has established competitive injury. As a result, the court rejects Bee Warehouse's argument that Blazer cannot show competitive injury because he no longer directly sells carpenter bee traps—meaning that Blazer has sufficiently shown that he has standing to bring a false marking claim against Bee Warehouse.

2. <u>Intent to deceive</u>: Bee Warehouse asserts that Blazer hasn't adequately alleged that Bee Warehouse intended to deceive the public with the false mark.[1] Because false marking claims sound in fraud, Blazer must meet Rule 9(b)'s heightened pleading requirements. *See In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1309–11 (Fed. Cir. 2011). Indeed, the stringent standards for pleading a False Claims Act claim apply to false marking claims under § 292. *See id.* at 1310–11. So conclusory allegations, such as the defendant is a "sophisticated company" or "knew or should have known" of the false marking, don't adequately state a false marking claim. *See id.* at 1309.

Instead, the plaintiff must plead in detail "the specific who, what, when, where, and how" of the alleged fraud. *Id.*; *see also Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015) ("To satisfy this heightened-pleading standard in a False Claims Act action, the relator has to allege facts as to time, place, and substance of the defendant's alleged fraud, particularly, the details of the defendants' alleged fraudulent acts, when they occurred, and who engaged in them." (quotations omitted)). A plaintiff can do so by, for example, alleging specific individuals who knew of the false marking, citing examples of past litigation involving the false marker, or showing that the defendant made multiple revisions of the marking. *See In re BP Lubricants*, 637 F.3d at 1312.

Blazer's only allegation of scienter in his operative counterclaim is that Bee Warehouse "know[s] or should know that U.S. Patent D923,742 does not cover the Bee Warehouse bee trap at least because the difference in the claimed design and the actual Bee Warehouse trap are obvious to any observer." (Doc. 33 ¶ 41). This allegation falls far short of the heightened pleading requirements of Rule 9(b) because it provides no "objective indication to reasonably infer" that Bee Warehouse intended to deceive the public into thinking the '742 patent covered its bee traps. *See In re BP Lubricants*, 637 F.3d at 1311. Indeed, the Federal Circuit has held that it "is

---

[1] Bee Warehouse also says that Blazer has failed to adequately plead competitive injury under Rule 12(b)(6). For the reasons Bee Warehouse's facial attack on Blazer's allegations of competitive injury fails, the court rejects Bee Warehouse's 12(b)(6) argument on competitive injury.

clearly incorrect" to say that a general allegation that a defendant "knew or should have known" about a false marking satisfies Rule 9(b)'s requirements. *See id.* So the court finds that Blazer's counterclaim, as pleaded, fails to state a claim upon which relief can be granted.

### B.    Blazer's Proposed Amendments

In response to Bee Warehouse's motion to dismiss, Blazer asks for leave to amend his false marking counterclaim. Bee Warehouse replies that the court shouldn't grant Blazer leave to amend because he hasn't shown good cause for needing to extend the court's scheduling order deadlines or adequately pleaded an intent to deceive in his proposed amended counterclaim. The court agrees that Blazer hasn't shown good cause, so the court won't address Bee Warehouse's argument that Blazer's proposed amendments are futile.

Rule 15(a) says that courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, that means the court will grant leave to amend unless the court finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir. 1999) (quotations omitted). But when the request to amend occurs after the scheduling order's deadline to amend pleadings has passed, the movant "must first demonstrate good cause under Rule 16(b) before [this court] will consider whether amendment is proper under Rule 15(a)." *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998).

Blazer filed his false marking counterclaim on May 5, 2023, the last day the scheduling order allowed the parties to amend the pleadings. (*See* Docs. 33, 20). And he didn't seek leave to amend the counterclaim until June 13, 2023, the day his response in opposition to Bee Warehouse's motion to dismiss was due. (Doc. 45). So Blazer must establish good cause under Rule 16(b) before the court can address whether the proposed amended counterclaim satisfies Rule 15(a)'s requirements.

Blazer's brief doesn't address Rule 16's good cause requirement. He instead says the court should grant him leave to amend because this is the first time he's sought to amend Count II; he only seeks leave to amend in response to the motion to dismiss; and, while he could suffer serious prejudice from the denial of his request, Bee Warehouse wouldn't suffer any prejudice. The "good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa*, 133 F.3d at 1418 (quoting Fed. R. Civ. P. 16 advisory committee's note). And Blazer should have known that false marking claims must satisfy Rule 9(b)'s particularity requirements before he added a false marking counterclaim on the last day the scheduling order allowed the parties to amend the pleadings.

That Blazer's proposed amended counterclaim includes much more particular allegations than Blazer's operative counterclaim shows that Blazer could have more adequately pleaded a false marking claim before the scheduling order's deadline to amend the pleadings expired. In fact, it appears Blazer knew most of the facts that he seeks to add with his proposed amended counterclaim before the scheduling order's deadline to amend pleadings. Blazer would have known how the Bee Warehouse false mark caused him competitive injury, such as Home Depot's alleged termination of an agreement with his licensee because of the false mark. And at the April 17, 2023, preliminary injunction hearing, Blazer testified that "[a] lot of their traps are marked with the wrong patent or falsely marked." (Doc. 24 at 102). So the record suggests that Blazer could have alleged that Bee Warehouse had a long history of falsely marking products, citing examples, before the amended pleading deadline.

The only newly alleged fact that Blazer couldn't have known by the May 5 deadline is that Bee Warehouse would add disclaimers on its website and Amazon listing that say, "there may be a typo" related to the patent number provided on the product that a customer receives. But this allegation, standing alone, doesn't provide an objective indication that Bee Warehouse intended to deceive the public.

In short, Blazer hasn't shown that good cause exists to extend the scheduling order's amended pleading deadline or shown that he diligently sought to plead facts that would satisfy Rule 9(b)'s particularity requirement.

So the court will deny Blazer's request to amend his false mark counterclaim. *See Robertson v. Interactive Coll. of Tech./Interactive Learning Sys., Inc.*, 743 F. App'x 269, 273 (11th Cir. 2018) (affirming denial of motion for leave to amend when the plaintiff didn't discuss good cause standard or show "due diligence in attempting to obtain the information in his amended complaint").

## II.   Motion for Summary Judgment (doc. 46)

Blazer's motion for partial summary judgment asserts that federal patent law preempts Bee Warehouse's tortious interference and bad-faith assertion of patent infringement claims. "[F]ederal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." *Lite-Netics, LLC v. Nu Tsai Cap., LLC*, 60 F.4th 1335, 1343 (Fed. Cir. 2023). As a result, Bee Warehouse's state-law claims "can survive federal preemption only to the extent that those claims are based on a showing of 'bad faith' action in asserting infringement." *Id.*

Blazer says the court's preliminary injunction order holding that he did not act with objective bad faith in claiming that the Bee Warehouse trap infringed his '421 patent means Bee Warehouse's state-law claims are completely preempted. Bee Warehouse responds that the court should deny Blazer's motion under Federal Rule of Civil Procedure 56(d) or deny the motion as premature and allow Blazer to refile a similar motion at the close of discovery.

The court agrees with Bee Warehouse that Blazer's motion is premature. As the court explained in its preliminary injunction order, the findings of fact and conclusions of law made by a court in ruling on a preliminary injunction motion are not binding at a trial on the merits. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). And the Federal Circuit has recognized that even if objective bad faith isn't shown at the preliminary injunction stage, it may be shown at later stages in the proceedings. *See Lite-Netics*, 60 F.4th at 1345 ("For reasons we will set out, we conclude that Lite-Netics position on all three of those disputes has not been shown, at this stage of the litigation (before, *e.g.*, full claim-construction proceedings or possible expert reports on infringement), to be objectively

baseless. That conclusion requires vacatur of the preliminary injunction, without fully resolving the underlying disputes about claim construction, prosecution history estoppel, or other issues.").

In short, Blazer isn't entitled to summary judgment on Bee Warehouse's state-law claims just because Bee Warehouse didn't meet its burden to show it was entitled to the "extraordinary and drastic" remedy of a preliminary injunction. *See All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989). Discovery and further development of the record could still reveal that Blazer's allegations of infringement were objectively baseless. So the court **WILL DENY** Blazer's motion for partial summary judgment (doc. 46) **AS PREMATURE** and give Blazer leave to re-file the motion at the close of discovery.

### CONCLUSION

For these reasons, the court **WILL GRANT** Bee Warehouse's motion to dismiss (doc. 38) and **DENY** Blazer's request for leave to amend his false marking claim. The court **WILL DENY** Blazer's motion for partial summary judgment (doc. 46) **AS PREMATURE** but give Blazer leave to re-file the motion at the close of discovery.

The court will enter a separate order that **DISMISSES WITH PREJUDICE** Blazer's false marking claim and carries out this ruling.

**Done** on January 3, 2024.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

11