UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **BEE WAREHOUSE, LLC**, *et al.*,<br>    Plaintiffs,<br><br>v.<br><br>**BRIAN BLAZER**,<br>    Defendant. | **Case No. 1:22-cv-1623-CLM** |
| **BEE WAREHOUSE, LLC**, *et al.*,<br>    Plaintiffs,<br><br>v.<br><br>**BRADLEY BLAZER**,<br>    Defendant. | **Case No. 1:24-cv-893-CLM** |

## MEMORANDUM OPINION

Plaintiffs Bee Warehouse, LLC and Davis Product Creation and Consulting, LLC d/b/a BeesNThings ("DPCC"), (collectively, "Bee Warehouse") and Brian Blazer patent, make, and sell carpenter bee traps. They also have a history of claiming that the other party's bee traps infringe their patents.

These cases started when Brian Blazer reported to Amazon that a Bee Warehouse trap infringed his patent, resulting in Amazon de-listing the Bee Warehouse trap from its website. So Bee Warehouse sued Blazer in Case No. 1:22-cv-1623, alleging (among other things) state-law claims for tortious interference with business/contractual relations and bad-faith claims of patent infringement in violation of Ala. Code § 8-12-A-2.

Around 18 months later, Bee Warehouse sued Brian Blazer's brother, Bradley, in Case No. 1:24-cv-893, asserting that Bradley helped Brian get the Bee Warehouse trap removed by Amazon and is thus liable to Bee Warehouse for (a) tortious interference with business/contractual relations, (b) bad-faith claims of patent infringement in violation of Ala. Code § 8-12-A-2, and (c) civil

conspiracy. Bradley seeks dismissal of Bee Warehouse's claims against him (Doc. 11 in Case No. 1:24-cv-893).

For the reasons stated within, the court **DENIES** Bradley Blazer's motion to dismiss and **LIFTS** the stay in this consolidated action. Bradley will have until **June 17, 2025** to answer Bee Warehouse's complaint. The parties will then file an updated Rule 26(f) report by **June 27, 2025.**

## BACKGROUND

### A.  Statement of Alleged Facts

Bee Warehouse sells carpenter bee traps, sometimes designed by DPCC. Brian Blazer owns U.S. Patent Reissue No. 46,421 ("'421 patent"). Blazer has a history of alleging that DPCC's bee traps infringe the '421 patent, and DPCC and Blazer have sued each other over this issue several times.

DPCC designed a new carpenter bee trap based in part on Blazer's allegations of infringement in one of his other lawsuits. Here is what DPCC's new trap, which the parties call the "Bee Warehouse Trap," looks like:



(Doc. 1, p. 5).

Bee Warehouse sold the Bee Warehouse Trap in stores and on Amazon. Blazer sent a notice to Amazon, claiming that the Bee Warehouse Trap

infringed the '421 patent. Amazon then removed the Bee Warehouse Trap listings from its website.

According to the complaint, Bradley Blazer helped Brian get the Bee Warehouse traps removed from Amazon. Bradley, an engineer, is one of the co-inventors of the '421 patent and drafted the original patent application for the '421 patent. Bradley admits that when he discovers a carpenter bee trap that he believes infringes the '421 patent, he sends the information about those third-party traps to Brian. For example, Bradley informed Brian that he believed a bee trap DPCC was selling on eBay infringed Brian's patent.

Bradley also helps Brian notify Amazon about his infringement claims by creating claims charts to present to Amazon that compare the claims in the '421 patent with the bee traps Brian contend infringe his patent. Bee Warehouse says that's what happened here: Bradley created a Notice of Claimed Infringement ("NOCI") chart for the Bee Warehouse Trap that Brian sent to Amazon along with his request that Amazon de-list the Bee Warehouse traps. Based on the NOCI chart, Amazon removed the Bee Warehouse Trap from its website.

Bee Warehouse says the infringement contentions in the NOCI chart were frivolous and made in bad faith because the Bee Warehouse Trap does not have a receptacle adapter, which the Federal Circuit has defined as "a structure configured to receive and help retain a receptacle." And Bee Warehouse contends that by making the NOCI chart, Bradley, acting in concert with his brother, was responsible for preventing Bee Warehouse from selling an obviously non-infringing bee trap on Amazon for many months, including during the height of bee season.

### B. Procedural History

1. *Infringement ruling*: As explained in the introduction, Bee Warehouse sued Brian over Amazon's de-listing of the Bee Warehouse Trap about 18 months before it sued Bradley. Soon after suing Brian, Bee Warehouse moved for a preliminary injunction that would prohibit Brian from claiming that the Bee Warehouse Trap infringed his patent. (Doc. 3 in Case No. 1:22-cv-1623). The court found that Bee Warehouse had established a substantial likelihood of success on its claim that the Bee Warehouse Trap

did not infringe the '421 patent because the Bee Warehouse Trap did not have a receptacle adapter that performed the receptacle adapter functions described in the '421 patent. (Doc. 32, pp. 4–13 in Case No. 1:22-cv-1623). But the court denied Bee Warehouse's preliminary injunction motion because the evidence at the preliminary injunction hearing did not establish that Brian's patent infringement claims were objectively baseless, which was required for Bee Warehouse to obtain an injunction. (*See id.*, pp. 17–20).

Based on the court's preliminary injunction ruling, Bee Warehouse moved for summary judgment in its favor on Brian's counterclaim that the Bee Warehouse Trap infringed the '421 patent. (Doc. 35 in Case No. 1:22-cv-1623). Brian opposed Bee Warehouse's motion and made two arguments for why a reasonable juror could find that the Bee Warehouse Trap infringed the '421 patent. (Doc. 44 in Case No. 1:22-cv-1623). First, Brian asserted that the bottom of the trap entrance unit, together with the plastic lip around the receptacle, served as the receptacle adapter. (*See id.*, pp. 13–15). Second, Brian argued that the Phillips-head screws in the Bee Warehouse trap also serve as a receptacle adapter. (*Id.*, p. 15). And at the preliminary injunction hearing, Brian asserted "a third theory—that the combination of (1) the bottom of the trap entrance unit, (2) the clear plastic lip around the receptacle, and (3) the screws which secure the receptacle to the trap entrance unit constitute a receptacle adapter." (Doc. 53, p. 7, n.1 in Case No. 1:22-cv-1623).

The court rejected each of these arguments and granted summary judgment in Bee Warehouse's favor. (*See id.*, pp. 4–10). Bee Warehouse characterizes the arguments Blazer made opposing Bee Warehouse's motion for summary judgment as frivolous and nonsensical. (Doc. 1, ¶¶ 25–28). And Bee Warehouse says that these arguments were concocted by Bradley when he created the NOCI chart. (*See id.*, ¶¶ 24, 29). According to Bee Warehouse, Bradley either knew, or should have known, that each of these arguments was meritless because of his substantial experience with patents. (*Id.*, ¶ 24).

2. *Bad faith ruling*: Because the court denied Bee Warehouse's motion for preliminary injunction for failure to show that Brian acted with objective bad faith, Brian moved for summary judgment on Bee Warehouse's tortious interference with business relations and bad-faith assertion of patent

4

infringement claims. (*See* Doc. 46-1 in Case No. 1:22-cv-1623). As Brian pointed out in his motion, federal patent law preempts these two state-law claims unless Bee Warehouse can show that Brian made a bad-faith assertion of patent infringement.

The court denied the partial motion for summary judgment under Federal Rule of Civil Procedure 56(d), reasoning that "[d]iscovery and further development of the record could still reveal that [Brian's] allegations of infringement were objectively baseless." (Doc. 65, pp. 10–11 in Case No. 1:22-cv-1623). The court then referred Bee Warehouse's claims against Brian to a magistrate judge for mediation. Four days before the scheduled mediation, Bee Warehouse sued Bradley.

## STANDARD OF REVIEW

In reviewing Bradley's Rule 12 motion, the ultimate question is whether Bee Warehouse's allegations, when accepted as true, "plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). If the facts as pleaded could entitle Bee Warehouse to relief, then the court must deny Bradley's motion to dismiss. If, however, the court accepts all of Bee Warehouse's pleaded facts as true, and Bee Warehouse still would not be entitled to relief, then the court must grant the motion.

## DISCUSSION

As explained, Bee Warehouse sues Bradley for (1) tortious interference with business/contractual relations, (2) bad-faith assertion of patent infringement, and (3) civil conspiracy.

Bradley argues that the court should dismiss these claims for four reasons: (1) Bradley is not the owner of the '421 patent, (2) Bradley cannot be held liable for arguments Brian made opposing Bee Warehouse's motion for summary judgment, (3) federal patent law preempts Bee Warehouse's state-law claims, and (4) Bee Warehouse's claims fail to satisfy the *Twombly-Iqbal* pleading requirements.

### A.   Ownership of '421 Patent

Bradley first argues that because the parties agree that Brian Blazer is the sole owner of the '421 patent, Bradley cannot be held liable for alleged bad-faith assertions that the Bee Warehouse Trap infringed the '421 patent. The court disagrees. Ownership of a patent is not an element of a tortious interference claim. *See White Sands Grp., LLC v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009) (Plaintiff states claim of tortious interference by alleging (1) the existence of a protectable business relationship, (2) of which the defendant knew, (3) to which the defendant was a stranger, (4) with which the defendant intentionally interfered, and (5) damage.). And while a claim under Ala. Code § 8-12-A-2 requires the defendant to have "assert[ed] a claim of patent infringement," Ala. Code § 8-12A-2(a), Bee Warehouse has plausibly alleged that Bradley was the author of the NOCI chart sent to Amazon. Finally, "[t]he elements of civil conspiracy in Alabama are: (1) concerted action by two or more persons (2) to achieve an unlawful purpose or a lawful purpose by unlawful means." *Ex parte Maint. Grp., Inc.*, 261 So. 3d 337, 347 (Ala. 2017). So the court finds that Bee Warehouse's claims against Bradley do not require Bradley to have been the owner of the '421 patent.

### B.   Liability for Summary Judgment Arguments

Bradley next says that he cannot be held liable for arguments Brian made in opposition to Bee Warehouse's motion for summary judgment in Case No. 1:22-cv-1623. The court agrees that Bradley cannot be held liable for the filing of Brian's response brief, which had no effect on Bee Warehouse's relationship with Amazon. So the court will not entertain any claims that Bradley is liable for the arguments Brian and his attorneys made in Bee Warehouse's case against him.

But the court does not read Bee Warehouse's complaint as alleging that Bradley is liable for Brian's court filings. Instead, the court reads Bee Warehouse's complaint as alleging that the arguments Brian made in *Bee Warehouse I* were derived from Bradley's NOCI chart and that the weakness of those arguments show that the claims of infringement Bradley made to Amazon were objectively baseless. Under this reading of the complaint, the court finds it appropriate for Bee Warehouse to allege a connection between

6

Brian's summary judgment arguments to the NOCI chart Bradley created and then argue that the weakness of those arguments supports Bee Warehouse's assertion that Bradley made his infringement contentions in bad faith.

### C.  Preemption + Plausibility Pleading Standards

Bradley's third and fourth arguments work together. "[F]ederal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." *Lite-Netics, LLC v. Nu Tsai Cap., LLC*, 60 F.4th 1335, 1343 (Fed. Cir. 2023). So to state a claim against Bradley for tortious interference, bad-faith assertion of patent infringement, and civil conspiracy, Bee Warehouse must plausibly allege bad faith as it's an "element necessary to support its state-law claims." *See Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1332 (Fed. Cir. 2012). Bad faith in this context has both an objective and subjective component. *See Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998).

#### 1.  **Objective Bad Faith**

To establish objective bad faith, a plaintiff "must establish that the claims of infringement were objectively baseless." *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004). An infringement allegation is objectively baseless if "no reasonable litigant could realistically expect success on the merits." *Lite-Netics, LLC*, 60 F.4th at 1343 (quoting *GP Indus. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007)).

For a carpenter bee trap to infringe claims '13–21 of the '421 patent, the bee trap must include a receptacle adapter. (*See* Doc. 1-1, pp. 17–18). Bee Warehouse asserts that it was objectively baseless for Bradley to claim that the Bee Warehouse Trap infringed the '421 patent because the Bee Warehouse Trap does not have a receptacle adapter, which is "(1) a structure; (2) located at the exit opening of the trap entrance unit; (3) configured to receive at least one receptacle; (4) configured to help retain a receptacle; and (5) that allows at least some ambient light to enter the interior of the trap entrance unit via the exit opening." (Doc. 1, ¶¶ 22–25). To support its

7

assertion that Bradley's receptacle adapter arguments were made in bad faith, Bee Warehouse alleges that Bradley's infringement contentions in the NOCI chart mirrored Brian's argument in *Bee Warehouse I* that the Bee Warehouse Trap included several structures that qualify as a receptacle adapter. (*Id.*, ¶¶ 24–29).

The first alleged infringement assertion was that the bottom corner of the trap entrance unit together with the plastic lip around the top of the receptacle serves as the Bee Warehouse Trap's receptacle adapter. (*See id.*, ¶ 24–26). According to Bee Warehouse, this argument was "frivolous," made in bad faith, and "nonsensical" because (1) this structure is as far from the exit opening of the Bee Warehouse Trap's trap entrance unit as possible; (2) the receptacle adapter cannot also be the receptacle because a thing cannot receive itself; and (3) once the plastic lip of the receptacle form fits to the bottom of the wooden trap entrance unit, no light can pass through this area. (*Id.*, ¶ 26). The second alleged bad-faith infringement assertion was that the Phillips-head screws that run through the receptacle into the bottom of the entrance unit serve as a receptacle adapter. (*Id.*, ¶ 27). Bee Warehouse says that the screws cannot serve as the receptacle adapter because (a) the screws aren't located at the exit opening of the trap entrance unit, and (b) the screws do not allow any light to pass through them. (*See id.*). The final infringement contention that Bee Warehouse points to is the contention that the combination of (1) the bottom of the trap entrance unit, (2) the clear plastic lip around the receptacle, and (3) the screws constitute a receptacle adapter. (*Id.*, ¶ 28). Bee Warehouse says that this infringement contention fails because (a) the combination of these three items is still not located at the exit opening, and (b) it does not allow for ambient light to enter the trap entrance unit via the exit opening. (*Id.*).

While it's a close call, the court finds that Bee Warehouse has plausibly alleged that Bradley's infringement allegations were objectively baseless. Bee Warehouse has pointed to exactly which infringement contentions in the NOCI chart it contends were frivolous (*i.e.*, those contentions that mirror what Brian argued in response to the motions for preliminary injunction and summary judgment in *Bee Warehouse I*). And Bee Warehouse has explained why it contends no reasonable litigant could have expected to succeed with these arguments (*i.e.*, for the same reasons why this court rejected Brian's

8

receptacle adapter arguments in *Bee Warehouse I*). The court recognizes that "[a]n incorrect allegation of patent infringement is not necessarily objectively baseless." *Lite-Netics*, 60 F.4th at 1344. But at the motion to dismiss stage, the court is not deciding whether Bradley's infringement contentions were ***in fact*** objectively baseless. Instead, the court is simply tasked with deciding whether Bee Warehouse's pleaded facts allow the court to infer that no reasonable litigant would have expected to succeed on the receptacle adapter contentions Bradley made in the NOCI chart. Having reviewed the complaint and the parties' briefs, the court finds that Bee Warehouse's allegations satisfy this requirement.

### 2. Subjective Bad Faith

For Bee Warehouse's state-law tort claims to fall within the bad-faith exception to preemption, Bee Warehouse must also show that Bradley's patent infringement assertions were subjectively baseless. *See Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1305 (Fed. Cir. 2018). In evaluating a defendant's subjective motivation for claiming patent infringement, the court should focus on whether the defendant was "attempting to interfere *directly* with the business relationships of a competitor." *See Globetrotter*, 362 F.3d at 1376 n.6 (quotations omitted).

Bee Warehouse alleges that Bradley's substantial experience with patents means that he knew, or should have known, that the NOCI chart's receptacle adapter contentions included frivolous, meritless, and bad faith theories of infringement. (Doc. 1, ¶ 24). Bee Warehouse also says that Bradley created the chart for Brian to present to Amazon to get Amazon to de-list or remove the Bee Warehouse Trap from its website. (*Id.*, ¶¶ 17–18). The infringement contentions in the NOCI chart then worked to prevent Bee Warehouse from selling an obviously non-infringing bee trap on Amazon for many months, including during the height of bee season. (*Id.*, ¶ 30).

At this stage in the proceedings, the court finds that these allegations adequately assert that Bradley acted with subjective bad faith. So the court will deny Bee Warehouse's motion to dismiss on preemption and plausibility pleading grounds.

—

"[A] party attempting to prove bad faith on the part of a patentee enforcing its patent rights has a heavy burden to carry." *800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1370 (Fed. Cir. 2008). Indeed, if Bee Warehouse's state-law claims proceed to trial, Bee Warehouse will have to prove by clear and convincing evidence that the Blazers' patent infringement "assertions were both objectively and subjectively baseless." *See Energy Heating*, 889 F.3d at 1305. Discovery may reveal that Bee Warehouse cannot meet this burden. But that day is yet to come. For now, Bee Warehouse has plausibly alleged that the bad faith exception to federal preemption is satisfied, which is all that is required to survive Bradley's Rule 12(b) motion. So the court must deny Bradley's motion.

## CONCLUSION

For these reasons, the court **DENIES** Bradley's motion to dismiss (Doc. 11 in Case No. 1:24-cv-893). The court **LIFTS** the stay in this consolidated action. Bradley will have until **June 17, 2025,** to answer Bee Warehouse's complaint. The parties will then have until **June 27, 2025,** to file an updated Rule 26(f) report. The Rule 26(f) report should include an update on the pending motions for sanctions in Case No. 1:22-cv-1623 (*see* docs. 100 & 105).

**Done** and **Ordered** on May 20, 2025.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE